CITY OF KENOSHA, Petitioner-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION and Charles
Leipzig,Jr., Respondents-Respondents.

Court of Appeals

*No. 2010AP883. Submitted on briefs November 11, 2010.
—Decided March 16, 2011.*

**2011 WI App 51**

(Also reported in 797 N.W.2d 885.)

449

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Michael McFarlane* and *Robert H. Zilske* of *Zilske Law Firm, S.C.*, Brookfield.

On behalf of the respondents-respondents, the cause was submitted on the brief of *Israel Ramon* and *Michele A. Peters* of *Hawks Quindel, S.C.*, Milwaukee; and *Charlotte Gibson*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Anderson, J.

¶ 1. ANDERSON, J.  The City of Kenosha appeals from the determination of the Labor and Industry Review Commission (LIRC) that Captain Charles Leipzig, Jr., suffered a compensable injury while engaged in a physical well-being activity on duty at Fire Station Number 5. The City maintains that because Leipzig was not receiving additional compensation for participating in a physical well-being activity, the "well-being activity exclusion" found in WIS. STAT. § 102.03(1)(c)3. (2009–10)[1] prevents him from receiving worker's compensation benefits. We reject the City's interpretation of the statute because it produces byzantine inquiries and bizarre results. We affirm because at the time of the injury Leipzig was receiving compensation to "stand ready" at the fire station.

¶ 2.  The basic facts are not in dispute and we summarize them from LIRC's decision. Leipzig started working as a firefighter for the City of Kenosha in 1990. On the date of his injury, he was a fire captain, assigned

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

to Fire Station Number 5. His injury happened while he was on active duty on a twenty-four-hour shift; he was playing basketball with fellow firefighters and members of the public in a city park next to the fire station.

¶ 3.  The City's Fire Chief, John Thomsen, testified that it was common for on-duty firefighters to play basketball during their shifts. He explained that firefighters playing basketball would be regarded as "in their quarters" for the purpose of the collective bargaining agreement between the City and its firefighters. He did not consider playing basketball while on active duty to be an abandonment of the job duties of a firefighter. Thomsen made clear that it is important for firefighters to be physically fit, due to the stress and demands of firefighting. He testified the City's fire department had no formal fitness policy, but rather an informal fitness program under which the fire department encourages personnel to engage in physical fitness activities while on duty.[2] At Fire Station Number 5, the City provided a weight room, treadmills and elliptical trainers for the use of the firefighters.

¶ 4.  While playing basketball on March 18, 2007, Leipzig reached for the basketball, felt a "pop" in his right arm and experienced pain. He suffered a complete "distal biceps rupture" and returned to work without any restrictions on July 9, 2007.

¶ 5.  Leipzig filed an application for a worker's compensation hearing seeking ten percent permanent

---

[2] WISCONSIN ADMIN. CODE § Comm 30.07 requires a fire department to provide training and education for firefighters to prepare them to safely perform their duties. WISCONSIN ADMIN. CODE § Comm 30.15 requires a fire department to "assure that fire fighters who are expected to do structural fire fighting are physically capable of performing duties which may be assigned to them during emergency operations."

451

partial disability as compared to amputation of the right elbow and payment of medical expenses. The City responded that Leipzig's injury did not arise out of his employment while performing services incidental to his employment. After a hearing, an administrative law judge (ALJ) found that Leipzig sustained an injury arising out of his employment with the City and further found that he had suffered a ten percent permanent partial disability as compared to amputation of the right elbow and ordered the City to pay all of his medical expenses.

¶ 6.   The City and Leipzig[3] filed timely petitions for review by LIRC, which affirmed the ALJ. The issue before LIRC was whether Leipzig sustained a compensable injury while playing basketball on active duty at Fire Station Number 5. Rejecting the City's argument that Leipzig was paid to be a firefighter and not a basketball player, LIRC, after summarizing the undisputed evidence, concluded that Leipzig was paid to participate in the fitness activities while on active duty. The City appeals.

¶ 7.   On appeal, we review LIRC's decision and not the circuit court's. *Pick 'n Save Roundy's v. LIRC*, 2010 WI App 130 ¶ 8, 329 Wis. 2d 674, 791 N.W.2d 216. The City is not challenging any of LIRC's factual findings; as we noted, the facts are undisputed. The City's challenge is limited to LIRC's interpretation and application of a portion of Wis. Stat. § 102.03(1)(c)3.

---

[3] Leipzig's petition for review was limited to challenging the ALJ's issuance of a final order rather than an interlocutory order. LIRC held that it could not say with certainty that he will not sustain additional disability with respect to the injury and made its order interlocutory. Neither of the parties challenges the interlocutory nature of LIRC's order.

An employee is not performing service growing out of and incidental to employment while engaging in a program, event, or activity designed to improve the physical well-being of the employee, whether or not the program, event, or activity is located on the employer's premises, if participation in the program, event, or activity is voluntary and the employee receives no compensation for participation.

██

¶ 8.   We generally review LIRC's construction of a statute and its application to undisputed facts independently. *County of Dane v. LIRC*, 2009 WI 9, ¶ 14, 315 Wis. 2d 293, 759 N.W.2d 571. Depending on the circumstances, LIRC's interpretation of a statute is accorded one of three levels of deference:   great weight deference, due weight deference, or no deference. *Pick 'n Save Roundy's*, 329 Wis. 2d 674, ¶ 9.

¶ 9.   The parties differ over the appropriate level of deference we should accord LIRC's interpretation. LIRC contends that it is entitled to great weight deference, while the City claims it is entitled to no deference. We need not decide, however, which level of deference is appropriate because we are satisfied that LIRC's interpretation is the only correct reading of the statute. *See Jarrett v. LIRC*, 2000 WI App 46, ¶ 10, 233 Wis. 2d 174, 607 N.W.2d 326.

¶ 10.   The    City    asserts    that    Wis.    Stat. § 102.03(1)(c)3. prescribes special conditions in which the employee is deemed not in the course of employment at the time of the injury. It labels the statute the "well-being activity exclusion" and contends that it applies if, at the time of injury, (1) the employee is engaged in an activity designed to improve his physical well-being, (2) his participation is voluntary, and (3) he receives no compensation for participation. The City proposes that these conditions are satisfied in this case

and Leipzig was not in the course of employment at the time of the injury.

¶ 11.   We note that for the City to win the day, it must convince us that all three of the statute's criteria are met. We need not discuss the first two because we are satisfied that the City fails with regard to the third prong. In our view, the well-being activity exclusion is not applicable because Leipzig was being compensated by the City to stand ready at the fire station at the time of his injury.

¶ 12.   The general proposition is that an employee has suffered a compensable injury when he or she is injured while engaged in some activity that is related to his or her employer's business. *See Fry v. LIRC*, 2000 WI App 239, ¶ 9, 239 Wis. 2d 574, 620 N.W.2d 449. Here, Leipzig was employed by the City as a firefighter and was on-duty at Fire Station Number 5 when he suffered his injury. It could not be any clearer that he was engaged in the City's business—providing fire fighting capabilities—at the time of the injury. It is conceded by the City that Leipzig was being compensated as a firefighter at the time of his injury, which is all that is needed to come under the worker's compensation law. We reject the City's position that to get out from under the well-being activity exclusion of Wis. Stat. § 102.03(1)(c)3., Leipzig would have to be receiving *additional compensation* for playing basketball.

¶ 13. The    City    argues    that    Wis.    Stat. § 102.03(1)(c)3. was changed by the legislature in response to *E. C. Styberg Engineering Co., Inc. v. LIRC*, 2005 WI App 20, 278 Wis. 2d 540, 692 N.W.2d 322 (Ct. App. 2004), to deny benefits to an employee injured while engaged in a physical well-being activity. In *Styberg*, we

affirmed LIRC's "determination that an employee who sustained a knee injury while playing softball during a paid break period deserved worker's compensation benefits." *Id.*, ¶ 1. *Styberg* was published on December 22, 2004. Section 102.03(1)(c)3. was amended by 2005 Wis. Act 172, § 6, which had an effective date of April 1, 2006. The fact that the amendment to the statute followed the publication of *Styberg* does not lead to the conclusion that the legislature meant to blunt the impact of *Styberg*, especially because the drafting history of the act, which began as 2005 S.B. 474, does not mention *Styberg*.[4]

¶ 14. In fact, the amendment to WIS. STAT. § 102.03(1)(c)3. only added "event, or activity" after each instance of "program." This amendment did nothing more than expand "program" with synonyms. It made no substantive change to the well-being activity exclusion. The Wisconsin Legislative Council summary of the changes to the worker's compensation law contained in 2005 Wis. Act 172 captured the limited nature of the amendment to § 102.03(1)(c)3.

> An employee who is injured while engaged in a voluntary and uncompensated *event or activity* designed to improve the employee's physical well-being is not eligible for worker's compensation.

http://legis.wisconsin.gov/lc/publications/act/2005/act172 –sb474.pdf (last visited Feb. 24, 2011) (emphasis added). LIRC's interpretation and application of § 102.03(1)(c)3. comports with this summary.

---

[4] The legislative history adds no support to the City's argument that the purpose of the well-being activity exclusion is to encourage employers to sponsor physical fitness activities by offering employers freedom from responsibility for worker's compensation that might be incurred by employees injured while undertaking physical fitness activities.

¶ 15.  The key to the application of the well-being activity exclusion is whether the employee was being compensated for engaging in his or her employer's business at the time of the injury. If the employer was compensating the employee when the injury occurred, it is the employer's acknowledgement that the employee was engaged in the employer's business and the well-being exception does not apply.

¶ 16.  In *Weisbrot v. United Healthcare*, No. 2003–020037 (LIRC worker's compensation decision Apr. 8, 2005), http://dwd.wisconsin.gov/lirc/wcdecsns/883.htm (last visited Feb. 24, 2011), LIRC awarded worker's compensation to a nurse who, while on duty, voluntarily attended a health fair at her place of employment and suffered an injury. In rejecting an argument similar to that made in this case by the City—that Leipzig's compensation was not allocated to playing basketball—LIRC, in *Weisbrot*, reasoned:

> However, it is undisputed that the applicant was allowed to attend the fair during her regular working hours and that she received her regular salary for this period of attendance. Respondents argue that the applicant's salary was not specifically allocated to the fair attendance, and that the applicant received no additional salary or other payment for her attendance. The commission finds these arguments to border on the frivolous, as it is clear that the applicant was compensated with her regular salary for the period she attended the fair.

¶ 17.  The circuit court decision here echoes LIRC's conclusions in *Weisbrot* and this case. We join with the circuit court because we cannot improve upon its reasoning:

456

I observe that the plaintiff's position demands a very unnatural reading of the statute, and would produce byzantine inquiries and bizarre results. For example, under that analysis, Captain Leipzig would be covered by the Worker's Compensation Law if, during his "idle time," he burned himself in the firehouse kitchen whipping up a batch of frosted brownies, but not if he pulled a muscle while lifting weights provided in the firehouse in order to maintain the strength necessary to carry a full-grown man out of a burning building. He would be covered for choking on a Doritos chip while watching "Desperate Housewives" on the firehouse television, but not for a sprained ankle sustained while jogging outside the station house in order to maintain his endurance.

And, if indeed, the originally-designed purpose of the activity makes any difference, as the [City] argues, then the captain would not be covered while doing calisthenics in the exercise room, something clearly designed to improve physical well-being, and which would be critically important to the performance of his duties; but would be covered if he were fencing, because fencing was not originally designed as a fitness activity, but instead, as practice for a skill essential to remaining alive.

Under the plaintiff's analysis, he would not be covered while playing basketball next to the firehouse, but would be covered while slumped in a chair playing a basketball video game. He would be covered for the fitness-worthless activity of miniature golf, which is designed not for "physical well-being," but merely for fun; but not covered for his time on a stair-climber.

None of this would make any sense at all, and courts are obliged to refrain from reading statutes in a manner which creates absurd results.

¶ 18. Our thoughts exactly. We fail to understand how the City can expect to pay a firefighter who is

injured fighting a fire, but not pay for the firefighter who, while standing ready, works to stay in shape so as to hopefully avoid being injured while fighting a fire. It makes no sense.

*By the Court.*—Order affirmed.