CITY OF APPLETON POLICE DEPARTMENT and City of
Appleton, Petitioners-Appellants,†

v.

LABOR AND INDUSTRY REVIEW COMMISSION and
Michael Nofzinger, Respondents-Respondents.

Court of Appeals

*No. 2011AP2008. Submitted on briefs February 7, 2012.
—Decided March 22, 2012.*

2012 WI App 50

(Also reported in 813 N.W.2d 237.)

† Petition for Review Filed.

720

721

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Joseph Danas, Jr.* and *Staci M. Flinchbaugh*, Milwaukee.

On behalf of the respondent-respondent, Labor and Industry Review Commission, the cause was submitted on the brief of *R. Duane Harlow*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf of the respondent-respondent, Michael Nofzinger, the cause was submitted on the brief of *Robert W. Dean* of *Henessy & Roach, P.C.*, Green Bay.

Before Vergeront, Sherman and Blanchard, JJ.

¶ 1. BLANCHARD, J. The City of Appleton Police Department and the City of Appleton (collectively, the City) appeal a circuit court judgment upholding a decision of the Labor and Industry Review Commission (the Commission) awarding worker's compensation benefits to a City police officer, Michael Nofzinger. Nofzinger received an injury as a result of performing push-ups in his basement in preparation for a mandatory physical fitness test that required him to perform push-ups, and the Commission concluded that the injury occurred in the course of Nofzinger's employment as required by WIS. STAT. § 102.03(1)(c) (2009–10).[1] We apply great weight deference to the Commission's interpretation of the statute and conclude that the Commission's interpretation is reasonable. We therefore affirm the circuit court's judgment upholding the Commission's decision.

## BACKGROUND

¶ 2. We take our background facts from the Commission's decision, which included the following findings of fact.

¶ 3. Nofzinger's employment is covered by a collective bargaining agreement that includes a requirement that each employee undergo a physical fitness test twice per year. The testing is designed and administered by the City. It includes five physical components: upper body strength, abdominal strength, flexibility, cardiovascular endurance, and body fat percentage. Employees receive points for each component, as well as a cumulative score placing the employee in one of four categories: poor, adequate, good, or excellent.

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

¶ 4.　If Nofzinger received a score of good or excellent, he would receive a lump sum cash premium, based on a percentage of his base pay, and would become eligible for a retirement bonus incentive. If he failed to maintain a score of adequate or better, or failed to participate in the test, he could be subject to disciplinary action.

¶ 5.　The standard upper body strength component of the physical fitness test measures how many push-ups the employee can perform. In order to count in the test, each push-up must be performed in accordance with the City's standards. The City prepared a training DVD for employees to view in order to understand acceptable standards for push-ups.

¶ 6.　The collective bargaining agreement covering Nofzinger's employment also requires that each employee provide a statement indicating that he or she has participated in a physical fitness program during the six-month period preceding the physical fitness test. The requirement that employees provide such statements is, in effect, a requirement that employees actually participate in such programs. The physical fitness program, like the fitness test, is therefore mandatory.[2]

¶ 7.　On October 12, 2008, Nofzinger was performing push-ups on a carpeted floor in the basement of his residence in preparation for a mandatory fitness test scheduled for October 23, 2008. While attempting his twelfth or thirteenth successive push-up, he suffered a rotator cuff injury to his right shoulder.

---

[2] These requirements are contained in the collective bargaining agreement and not required unilaterally by the City. However, nothing in the Commission's decision or the arguments of the parties suggests that it would make a difference if the physical fitness test and physical fitness program were required unilaterally by the City.

¶ 8. Nofzinger sought worker's compensation benefits for his shoulder injury. The Commission concluded that Nofzinger's injury occurred in the course of his employment and that he is entitled to benefits. As part of its decision, the Commission interpreted WIS. STAT. § 102.03(1)(c)3., which provides, in relevant part, that employees are not performing services in the course of employment when engaged in activities "designed to improve the physical well-being of the employee" if those activities are voluntary and uncompensated. The Commission concluded that Nofzinger's push-ups were not voluntary and were compensated.

¶ 9. The circuit court upheld the Commission's decision, and the City appeals. We reference additional facts as necessary in our discussion below.

## DISCUSSION

¶ 10. WISCONSIN STAT. § 102.03 sets forth the conditions for an employer's liability under the Worker's Compensation Act. *Doering v. LIRC*, 187 Wis. 2d 472, 478, 523 N.W.2d 142 (Ct. App. 1994). At issue in this case is the Commission's interpretation of § 102.03(1)(c), which requires that an employee's injury occur in the course of employment. More precisely, § 102.03(1)(c)1. requires that the injury occur while an employee is "performing services growing out of and incidental to his or her employment." As the court explained in *Weiss v. City of Milwaukee*, 208 Wis. 2d 95, 559 N.W.2d 588 (1997), "[t]he statutory clause 'performing service growing out of and incidental to his or her employment' is used interchangeably with the phrase 'course of employment.' " *Id.* at 104 (citations omitted).[3]

---

[3] The City also raises the question of whether the Commission correctly concluded that Nofzinger's injury "arise[s] out of" his employment, in apparent reference to the separate require-

¶ 11. WISCONSIN STAT. § 102.03(1)(c) contains limited guidance regarding what constitutes "service growing out of and incidental to . . . employment." One of the few areas in which the statute provides additional guidance is in reference to an employee's participation in "well-being" programs, events, or activities:

> An employee is *not* performing service growing out of and incidental to employment while engaging in a program, event, or activity designed to improve the physical well-being of the employee, whether or not the program, event, or activity is located on the employer's premises, if participation in the program, event, or activity is voluntary and the employee receives no compensation for participation.

§ 102.03(1)(c)3. (emphasis added). The logical corollary to § 102.03(1)(c)3. is that an employee *is* performing services growing out of and incidental to employment if the employee's injury occurs while participating in a well-being program, event, or activity that is not voluntary or for which the employee is receiving compensation.

¶ 12. In *City of Kenosha v. LIRC*, 2011 WI App 51, ¶¶ 10–11, 332 Wis. 2d 448, 797 N.W.2d 885, we applied a three-element test, tracking the language in WIS. STAT. § 102.03(1)(c)3., to determine whether an employer or employee should prevail when, as here, the issue is the applicability of § 102.03(1)(c)3. We must ask if "(1) the employee is engaged in an activity designed to improve

ment in WIS. STAT. § 102.03(1)(e) that "the accident or disease causing injury arises out of the employee's employment." However, we do not address this topic because the City merely raises the question and does not sufficiently develop an argument in this context. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals may decline to address insufficiently developed arguments).

[the employee's] physical well-being, (2) [the employee's] participation is voluntary, and (3) [the employee] receives no compensation for participation." *See id.*, ¶ 10. Only if all three elements are met will the employer prevail. *See id.*, ¶ 11.

¶ 13. Here, there is no serious dispute that Nofzinger was participating in a well-being program, event, or activity. However, the City argues that the Commission interpreted WIS. STAT. § 102.03(1)(c)3. incorrectly in concluding that Nofzinger's push-ups were not voluntary and were compensated. Before addressing this argument, we first address the proper level of deference to apply to the Commission's interpretation of the statute.[4]

### A. Level of Deference

¶ 14. Ordinarily, statutory interpretation is a question of law that is subject to de novo review, and courts are not bound by an administrative agency's interpretation of a statute. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 659, 539 N.W.2d 98 (1995). However, when we review an agency interpretation of a statute that an agency administers, we may give deference to the agency's decision. *See, e.g., Racine Harley - Davidson, Inc. v. State Div. of Hearings & Appeals*, 2006 WI 86, ¶ 14, 292 Wis. 2d 549, 717 N.W.2d 184. More specifically, a reviewing court "accords an interpretation of a statute by an administrative agency one of three levels of deference—great weight, due weight or no deference—based on the agency's expertise in the area

---

[4] We review the Commission's decision, not the circuit court's. *Hill v. LIRC*, 184 Wis. 2d 101, 109, 516 N.W.2d 441 (Ct. App. 1994).

of law at issue." *Stoughton Trailers, Inc. v. LIRC*, 2007 WI 105, ¶ 26, 303 Wis. 2d 514, 735 N.W.2d 477 (citation omitted).

> An agency's interpretation of a statute is entitled to great weight deference when: (1) the agency was charged by the legislature with the duty of administering the statute; (2) the interpretation of the agency is one of long-standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity in the application of the statute.

> We grant an intermediate level of deference, due weight, "where an agency has some experience in the area, but has not developed any particular expertise in interpreting and applying the statute at hand" that would put the agency in a better position to interpret the statute than a reviewing court.

> > The deference allowed an administrative agency under due weight is not so much based upon its knowledge or skill as it is on the fact that the legislature has charged the agency with the enforcement of the statute in question. [Under the due weight standard] . . ., a court will not overturn a reasonable agency decision that comports with the purpose of the statute unless the court determines that there is a more reasonable interpretation available.

> We apply de novo review [that is, no deference] when "there is no evidence that the agency has any special expertise or experience interpreting the statute[,] . . . the issue before the agency is clearly one of first impression, or . . . the agency's position on an issue has been so inconsistent so as to provide no real guidance."

*Id.*, ¶¶ 27–29 (citations omitted).

¶ 15. The City argues that we should give no deference to the Commission's interpretation of the statute. The Commission and Nofzinger argue that we should apply great weight deference. For the following reasons, we agree with the Commission and Nofzinger.

¶ 16. The first great weight deference criteria is undisputed and satisfied. "The Commission is charged by the legislature with administering the worker's compensation law . . . ." *Heritage Mut. Ins. Co. v. Larsen*, 2001 WI 30, ¶ 26, 242 Wis. 2d 47, 624 N.W.2d 129.

¶ 17. The second and third criteria are also satisfied, based on *Secor v. LIRC*, 232 Wis. 2d 519, 528–29, 606 N.W.2d 175 (Ct. App. 1999). *Secor*, as here, involved the Commission's interpretation of WIS. STAT. § 102.03(1)(c)1., and we stated as follows:

> Since at least the early part of this century, [the Commission] has had experience interpreting worker's compensation laws and, in particular, the language contained in § 102.03(1)(c)1[.], STATS., concerning whether an employee was performing services related to his or her employment at the time of his or her injury . . . . *Because [the Commission], for at least eighty years, has interpreted the provisions of § 102.03 relating to injuries while performing work growing out of and incidental to his or her employment, the second and third criteria are met.*

*Id.* (emphasis added).

¶ 18. The fourth great weight deference criteria also is satisfied. The City points to no lack of uniformity or lack of consistency in the Commission's interpretation of WIS. STAT. § 102.03(1)(c), and we discern no reason why the Commission's decision will not provide uniformity. We agree with the City's assertion that

decisions pertaining to an employee's well-being activities under § 102.03(1)(c)3. will often be highly fact dependent. However, we conclude that the highly fact-dependent nature of such decisions weighs in favor of, not against, the application of great weight deference, because the Commission is in a better position than this court to make highly fact-dependent decisions under § 102.03(1)(c)3. *See Pick'n Save Roundy's v. LIRC*, 2010 WI App 130, ¶ 15, 329 Wis. 2d 674, 791 N.W.2d 216 (applying great weight deference to the Commission's legal conclusions when they are " 'intertwined with factual determinations or with value or policy determinations' and [the Commission] 'has primary responsibility for determination of fact and policy.' " (quoting *Clean Wisconsin, Inc. v. PSC*, 2005 WI 93, ¶ 41, 282 Wis. 2d 250, 700 N.W.2d 768)).

¶ 19. The City's primary arguments in favor of no deference and against great weight deference are flip sides of the same coin and are foreclosed by existing case law. The City argues that we should give the Commission no deference instead of great weight deference because the Commission was addressing a new fact situation, which the City characterizes as an issue that is clearly one of first impression. We rejected this type of argument in *Honthaners Restaurants, Inc. v. LIRC*, 2000 WI App 273, 240 Wis. 2d 234, 621 N.W.2d 660:

> [T]he Commission need not have decided a case with identical or similar facts in order for its decision to be given great weight deference. In *Town of Russell Volunteer Fire Dep't v. LIRC*, 223 Wis. 2d 723, 589 N.W.2d 445 (Ct. App. 1998), *review denied,* 225 Wis. 2d 490, 594 N.W.2d 384 (1999), we concluded that "[t]he correct test under Wisconsin law [in applying deference to the Commission's decision] is whether [the Commission] has experience in interpreting a particular statutory

731

scheme, not whether it has ruled on precise, or even substantially similar, facts before." *Id.* at 733. Thus, although the facts here differ from those found in other cases dealing with the same issues, here we accord the Commission great weight deference because it has frequently been called upon to interpret the statutory scheme . . . .

*Id.,* ¶ 12.

¶ 20. Similarly, the City argues that the Commission's interpretation of the statute cannot be one of "long standing" because this case presents a novel fact situation. We rejected this type of argument in *E.C. Styberg Engineering Co. v. LIRC,* 2005 WI App 20, 278 Wis. 2d 540, 692 N.W.2d 322 (Ct. App. 2004):

> With respect to the . . . argument that [the Commission]'s interpretation here is not one of long standing, *Honthaners Rests., Inc.* makes clear that it is irrelevant whether [the Commission] has previously considered similar factual situations. *Honthaners Rests., Inc.,* 240 Wis. 2d 234, ¶ 12 . . . . The relevant inquiry is whether [the Commission] "has experience in interpreting a particular *statutory scheme." Honthaners Rests., Inc.,* 240 Wis. 2d 234, ¶ 12 (emphasis added).

*Id.,* ¶ 21. As already explained, the Commission has extensive experience interpreting Wis. Stat. § 102.03.

¶ 21. As part of its argument that the Commission's interpretation is not one of long standing, the City relies on *Oshkosh Corp. v. LIRC,* 2011 WI App 42, 332 Wis. 2d 261, 796 N.W.2d 217, a worker's compensation case in which we applied due weight deference rather than great weight deference to a Commission decision. *See id.,* ¶ 10. However, *Oshkosh Corp.* involved the interpretation of Wis. Stat. § 102.61(1g), pertaining to vocational rehabilitation benefits. *See id.* We stated in *Oshkosh Corp.* that the Commission "has limited experi-

732

ence in interpreting § 102.61(1g)" and "is therefore not in a better position to interpret § 102.61(1g) than this court." *Id.* This contrasts with the Commission's extensive experience interpreting WIS. STAT. § 102.03, as described in *Secor* above. Therefore, we do not view the City's reliance on *Oshkosh Corp.* as persuasive.

■

¶ 22. In sum, for the reasons stated, we apply great weight deference to the Commission's interpretation of WIS. STAT. § 102.03(1)(c)3.[5] The question therefore becomes whether the Commission's interpretation of the statute is a reasonable one, in which case we affirm. *See Margoles v. LIRC*, 221 Wis. 2d 260, 265 & n.3, 585 N.W.2d 596 (Ct. App. 1998). Under the great weight deference standard, we will uphold a reasonable interpretation of a statute, regardless of whether we discern an equally or even a more reasonable interpretation. *See id.*

---

[5] The City makes two additional arguments regarding the proper level of deference, but neither is persuasive. First, the City argues that the Commission should receive no deference because its decision is contrary to case law from a majority of jurisdictions that have decided the same issue. However, the City's reliance on case law from other jurisdictions is not persuasive for the reasons stated at ¶ 34 of Section B. of our discussion below. Second, the City argues that the Commission's references in its decision to case law from other jurisdictions shows that the Commission lacks experience in deciding the issue. However, we see no basis to conclude that the Commission relied on case law from other jurisdictions because it lacked pertinent experience in interpreting the statutory scheme at issue. We note that the City and Nofzinger cited case law from other jurisdictions in their briefs before the Commission. For this reason it is understandable that the Commission might decide to address such case law, giving the reasoning of those cases the weight to which it believed that reasoning is entitled, when considered in light of the specifics of Wisconsin's statutory scheme.

## B. Reasonableness of Commission's Decision

¶ 23. As indicated above, the City argues that the Commission interpreted Wis. Stat. § 102.03(1)(c)3. incorrectly in concluding that Nofzinger's push-ups were not voluntary and were compensated. For the reasons that follow, we uphold the Commission's decision because it reasonably concluded that Nofzinger's push-ups were not voluntary. We need not, and therefore do not, decide whether the Commission also reasonably concluded that Nofzinger was being compensated at the time he was injured because, as indicated above, the City prevails only if all three elements of the test under § 102.03(1)(c)3. are met. *See City of Kenosha*, 332 Wis. 2d 448, ¶ 11.

¶ 24. To briefly recap, the most pertinent facts as found by the Commission, and which are not disputed by the City, are as follows: Nofzinger was required to undergo a physical fitness test twice per year; the test included a component measuring how many push-ups he could perform; he received points for each component and a cumulative score; if he failed to maintain an adequate score, he could be subject to disciplinary action; and he was injured while performing a twelfth or thirteenth successive push-up in preparation for one of the tests. Based on these and the Commission's other fact findings, we conclude that the Commission reasonably decided that Nofzinger's push-ups were not voluntary within the meaning of Wis. Stat. § 102.03(1)(c)3. for at least four reasons.[6]

---

[6] We address in the text reasons supporting our conclusion that the Commission applied a reasonable interpretation of Wis. Stat. § 102.03(1)(c)3. to the facts of this case. The City also argues that the Commission made an incorrect "finding of fact" by concluding that Nofzinger's push-ups were not voluntary.

¶ 25. First, the most salient fact relating to voluntariness is that Nofzinger was injured while engaging in precisely the type of activity he was required to be tested and scored on—successive push-ups—for the purpose of preparing for the test. Indeed, it is difficult to imagine how an employee would reasonably prepare for the upper body strength component of the required physical fitness test *without* practicing or performing successive push-ups at times before each required test. It is true that the City did not direct Nofzinger to perform any push-ups at the moment of his injury, and therefore it might be said that he "voluntarily" chose the particular time and place to perform the push-ups. However, failing to prepare in precisely this manner would have subjected him to the risk of discipline, and in this sense it was reasonable for the Commission to conclude that his activity at the time of injury was not voluntary within the meaning of the statute.

This argument is based, for example, on testimony from a police lieutenant that Nofzinger's fitness program was "completely self-directed." The argument is not persuasive for at least two reasons. First, it is apparent that the question of whether an activity is "voluntary" in this context refers to a *legal* standard in reference to the statute. Second, even if the Commission's conclusion that Nofzinger's push-ups were not voluntary could be characterized as a finding of fact, there is credible evidence to support such a finding. The City concedes that the requirements contained in the collective bargaining agreement are evidence to support a Commission finding that Nofzinger's push-ups were not voluntary. This is enough to satisfy our standard of review for Commission fact finding. We ask only whether there is "any credible evidence" to support the finding, not whether there is evidence that could support a contrary finding. *See West Bend Co. v. LIRC*, 149 Wis. 2d 110, 118, 438 N.W.2d 823 (1989); *see also* WIS. STAT. § 102.23(6) (the court "shall not substitute its judgment for that of the commission as to the weight or credibility of the evidence on any finding of fact").

¶ 26. For these reasons, the City is not persuasive when it argues that, because Nofzinger had control over the "means and method" of preparation for the test and the City had no "direct control" over the place or time of his preparation, the Commission unreasonably concluded that the push-ups were not voluntary. Rather, it was reasonable for the Commission to conclude that Nofzinger had to prepare for the test somewhere and sometime during the six months in advance of the mandatory test. We note that the City points to no evidence that it provided Nofzinger with on-duty time or on-site facilities to prepare for the required physical fitness test or to engage in the required physical fitness program preceding the test.

¶ 27. Second, Nofzinger was required to participate in a physical fitness program for the six-month period preceding the physical fitness test, and it is reasonable to conclude that he was complying with this requirement at the moment he was injured. Although we need not decide whether the Commission's decision would be reasonable if Nofzinger was required to participate only in the physical fitness program, and not the physical fitness test, the fitness program requirement supports the reasonableness of the Commission's decision.

¶ 28. Considering these first two points together, it is reasonable to conclude that at the time of Nofzinger's injury he was participating in a mandatory program in the expected manner in order to comply with a mandatory test. It is reasonable to consider such an activity to be required and not voluntary under the terms of the statute.

¶ 29. Third, the Worker's Compensation Act "as a whole is to be 'liberally construed to include all services

that can be reasonably said to come within it.' " *Wisconsin Elec. Power Co. v. LIRC*, 226 Wis. 2d 778, 792, 595 N.W.2d 23 (1999) (quoting *CBS, Inc. v. LIRC*, 219 Wis. 2d 564, 579, 579 N.W.2d 668 (1998)); *see also Black River Dairy Prods., Inc. v. DILHR*, 58 Wis. 2d 537, 544, 207 N.W.2d 65 (1973). Here, the Commission's interpretation of Wis. Stat. § 102.03(1)(c) comports with this rule of liberal construction. The City, in contrast, advocates for what is effectively a strict interpretation of § 102.03(1)(c).

¶ 30. Fourth, the Commission's decision is consistent with the results reached in *City of Kenosha* and *E.C. Styberg*. In *City of Kenosha*, we upheld a Commission decision awarding worker's compensation benefits to a firefighter who was injured playing basketball while on duty during a twenty-four-hour shift. *City of Kenosha*, 332 Wis. 2d 448, ¶¶ 1–4, 6. In *E.C. Styberg*, we upheld a Commission decision awarding worker's compensation benefits to an employee who was injured playing softball during a short break period. *E.C. Styberg*, 278 Wis. 2d 540, ¶¶ 1–2, 5. In light of these cases, it was reasonable for the Commission here to award benefits to Nofzinger because, although he was at home and off duty at the time of his injury, he was performing an activity that was at least as closely connected to his job requirements as were the activities being performed by the employees in *City of Kenosha* and *E.C. Styberg* at the time of their injuries. Although each case is distinguishable on one or more grounds, and is therefore not controlling here, these cases support the reasonableness of the Commission's decision.[7]

---

[7] In *E.C. Styberg Engineering Co. v. LIRC*, 2005 WI App 20, 278 Wis. 2d 540, 692 N.W.2d 322 (Ct. App. 2004), we did not

¶ 31. The City further argues that the Commission's decision saddles the City with risks it has no ability to minimize. Our response to this argument is twofold.

¶ 32. First, the City's premise is untrue, at least to the extent that the City asserts a complete inability to minimize risks. This is evidenced in part by the Commission's finding that the City prepared a training DVD for employees to demonstrate acceptable standards for push-ups, to which the City could add or refine safety information and tips. Moreover, the City may change its physical fitness test requirements if it deems either the nature of the tests, or reasonably anticipated preparations for the tests, to be too risky. Further, it may provide employees with additional test preparation guidelines, on-duty test preparation time, or on-site test preparation facilities. Ultimately, of course, preparation for any physical test may result in injury, as the unfortunate facts of this case illustrate. However, the City's argument that it is without any ability to limit the risks when employees prepare for mandatory tests at times and places of the employees' choosing defies common sense.

¶ 33. Second, the City's risk-minimization argument is in essence a policy position regarding the balancing of risks and costs for employees and employers within the terms of the statutory scheme. This is a balance best addressed by the Commission, or, more

discuss the "well-being" activity provision in WIS. STAT. § 102.03(1)(c)3. In *City of Kenosha*, we interpreted the provision but only to determine whether the employee was compensated at the time of injury, not whether the employee's activity at that time was voluntary. *See City of Kenosha v. LIRC*, 2011 WI App 51, ¶¶ 11–15, 332 Wis. 2d 448, 797 N.W.2d 885.

generally, by the legislature to the extent that the current versions of WIS. STAT. § 102.03(1)(c)3. or related statutes are deemed to create unreasonable risks for employers.

¶ 34. The City also argues that the Commission's decision is contrary to case law in the majority of jurisdictions that have decided the same issue. However, those cases do not address a "well-being" activity provision like WIS. STAT. § 102.03(1)(c)3. *See generally City of Los Angeles v. Workers' Comp. Appeals Bd.*, 154 Cal. Rptr. 379 (Cal. Ct. App. 1979); *Price v. Industrial Claim Appeals Office*, 919 P.2d 207 (Colo. 1996); *Meeks v. Eddy C n ty . Sheriff s Dep't.*, 884 P.2d 534 (N.M. Ct. App. 1994); *Haugen v. State Accident Ins. Fund*, 588 P.2d 77 (Or. Ct. App. 1978). Moreover, this court has stated that "Wisconsin's Worker's Compensation Act has its own set of policy values unassociated with other states' worker's compensation statutes." *Town of Russell Volunteer Fire Dep't v. LIRC*, 223 Wis. 2d 723, 737, 589 N.W.2d 445 (Ct. App. 1998). "Wisconsin adopted a very liberal act and was not primarily concerned with making its law uniform with the worker's compensation statutes of other states." *Id.*

¶ 35. For the reasons stated above, we conclude that the Commission reasonably concluded that Nofzinger's push-ups were not "voluntary" as that term is used in WIS. STAT. § 102.03(1)(c)3.

## CONCLUSION

¶ 36. For all of these reasons, we affirm the circuit court's judgment upholding the Commission's decision.

*By the Court.*—Judgment affirmed.