GREDE FOUNDRIES, INC. and Grede Foundries, Inc.,
c/o Helmsman Management Services, Inc.,
Petitioners-Appellants,

v.

LABOR AND INDUSTRY REVIEW COMMISSION and Steven
C. Northcott, Respondents-Respondents.

Court of Appeals

*No. 2011AP2636. Submitted on briefs June 5, 2012.
—Decided June 19, 2012.*

2012 WI App 86

(Also reported in 819 N.W.2d 850.)

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *David C. Hertel* and *Erik K. Eisenmann* of *Whyte Hirschboeck Dudek S.C.*, Milwaukee.

On behalf of the respondents-respondents, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *David C. Rice*, assistant attorney general.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J.  Grede Foundries, Inc., and Grede Foundries, Inc., c/o Helmsman Management Services,

Inc., appeal the circuit court's order affirming an order entered by the Labor and Industry Review Commission that awarded Steven C. Northcott a "bad faith" penalty because Grede paid Northcott's worker's-compensation claim late.[1] Grede contends that its bankruptcy filing prevented the Commission from imposing the penalty, and, additionally, that there was insufficient evidence to support its finding of "bad faith." We reverse.

## I.

¶ 2. Northcott filed a worker's-compensation claim, contending that he was injured in March of 2001 as a result of his job with Grede. Grede and Northcott settled the claim, and the Department of Workforce Development approved the settlement in an order dated June 17, 2009. The order directed Grede to pay Northcott $11,600 plus $2,900 to Northcott's lawyer. The order declared that payment was due "[w]ithin twenty-one days from date" of the order. In February of 2010, a Department administrative law judge found that although payment was thus due by "July 8, 2009," Grede did not pay Northcott "until September 18, 2009, some 72 days after the July 8, 2009 deadline."

¶ 3. WISCONSIN STAT. § 102.18(1)(bp) provides, as material:

> If the department determines that the employer . . . failed to make payments . . . as a result of

---

[1] According to the notice of appeal, Grede Foundries, Inc, is now known as GFI Wisconsin, Inc. Grede Foundries, Inc., c/o Helmsman Management Services, Inc, is identified in the Record as Grede's self-insurance entity. *See* WIS. STAT. § 102.28(2)(b) (worker's-compensation self-insurance). Neither Grede Foundries, Inc., c/o Helmsman Management Services, Inc. nor Steven C. Northcott has filed separate briefs on this appeal.

malice or bad faith, the department may include a penalty in an award to an employee for each event or occurrence of malice or bad faith. . . . The department may award an amount that it considers just, not to exceed the lesser of 200 percent of total compensation due or $30,000 for each event or occurrence of malice or bad faith.

Finding that the delay was in "bad faith," the Department directed Grede to pay Northcott $2,900, and to pay his lawyer $725. The Commission affirmed the penalty. The Commission credited testimony presented by Grede at the hearing before the Department administrative law judge that Grede did not have the money to timely pay Northcott. The crux of its decision, however, was that as a self-insured employer for worker's-compensation purposes, Grede "was required to hold a surety bond for payment of worker's compensation claims[,]" and that it "never took any action to call upon the bondholder to pay [Northcott]'s claim."[2] It explained:

---

[2] WISCONSIN STAT. § 102.28(2)(b) provides:

*Exemption from duty to insure.* The department may grant a written order of exemption to an employer who shows its financial ability to pay the amount of compensation, agrees to report faithfully all compensable injuries and agrees to comply with this chapter and the rules of the department. The department may condition the granting of an exemption upon the employer's furnishing of satisfactory security to guarantee payment of all claims under compensation. The department may require that bonds or other personal guarantees be enforceable against sureties in the same manner as an award may be enforced. The department may from time to time require proof of financial ability of the employer to pay compensation. Any exemption shall be void if the application for it contains a financial statement which is false in any material respect. An employer who files an application containing a false financial statement remains subject to par. (a). The department may promulgate rules establishing an amount to be charged to an initial applicant for exemption under this paragraph and an annual amount to be charged to employers that have been exempted under this paragraph.

As long as Grede had no funds, it had a reasonable basis for not making its own payment to the applicant. However, after the department order [affirming the Grede/Northcott settlement] had been issued and Grede realized that it had no funds to make payment, it knowingly lacked a reasonable basis for not immediately initiating proceedings to call upon the surety bondholder to make such payment. Grede ultimately did make payment out of its newly-obtained funds on September 18, 2009, and as noted by the administrative law judge, it is uncertain from the record how long it would have taken the bondholder to actually make payment once it had been contacted. This uncertainty, together with consideration of the length of the delay in payment, led the commission [*sic* "department"?] and the administrative law judge to infer that the bad faith penalty should be assessed at the rate of 25 percent rather than a higher percentage.

As noted, the circuit court affirmed the Commission.

¶ 4. There is more to this case, however, than a simple order to pay a worker's-compensation claimant by a certain date and imposing a penalty when the payment is late, because Grede filed a Chapter 11 petition in bankruptcy on June 30, 2009, which triggered application of the so-called automatic-stay provisions of 11 U.S.C. § 362. As material here, § 362(a), "applicable to all entities," stays:

**(1)** the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

**(2)** the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

. . . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

Section 362(b)(4), however, exempts from the stay, as material here:

the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

¶ 5. Concurrent with its Chapter 11 filing, Grede also sought, as material here, an order from the bankruptcy court: "authorizing, but not directing, [Grede], at its discretion and in accordance with its stated policies, (1) to continue its existing worker's compensation programs and (2) to continue payment of worker's compensation benefits and related expenses with respect to prepetition worker's compensation claims." Specifically, Grede requested an order permitting it "to (1) continue its existing worker's compensation programs and (2) pay worker's compensation benefits and related expenses with respect to worker's compensation claims that were made prior to [June 30, 2009, the date Grede filed its Chapter 11 petition] as they come due."

¶ 6. Grede's June 30, 2009, motion averred that it was a self-insurer for worker's-compensation claims not exceeding $500,000, and that its self-insurance obliga-

tions were "supported by bonds or stand-by letters of credit issued in favor of the states where [Grede]'s plants are located." It also averred:

> If [Grede] fails to make a required benefit payment the appropriate governing agency in the state in which the claim arose can draw against the bond or letter of credit.[3] This in turn creates a reimbursement obligation owed by [Grede] (together with draw fees and other transactional expenses) to the bank or bond issuer.
>
> . . . .
>
> In view of the placement of the bonds and stand-by letters of credit to back up [Grede]'s obligation to pay worker's compensation benefits, in the first instance benefits will be paid even if not from [Grede]'s funds.

[3] This averment seems at odds with the Commission's assumption, as we noted in the main body of this opinion, that Grede, rather than the Department could "draw against the bond" if Grede did not timely pay a worker's-compensation claim. The Department's regulations appear however, to conflict with the Commission's assumption, and to be consistent with Grede's submission to the bankruptcy court. *See* WIS. ADMIN. CODE §§ DWD 80.60(4)(dm) (*"The department may call and use* any security provided by an employer under par. (d) to pay that employer's worker's compensation liabilities and to administer that employer's worker's compensation claims *if the department has a reasonable basis to believe that the employer is not able or will not be able to timely pay the worker's compensation liabilities* incurred during the period for which that employer was authorized to be self-insured.") & 80.60(4)(dx) ("A surety or bonding company shall provide the department with a written plan acceptable to the department for the review and payment of any worker's compensation liability of the self-insured employer within 15 days *after the department notifies the surety or bonding company that it is calling the bond.*") (Emphases added.) Neither Grede nor the Commission, however, address this matter, and, as seen later in the main body of this opinion, this conflict is immaterial to our decision.

But payment of the claims through the bonds or letters of credit (under which draws must be repaid by [Grede]) will increase [Grede]'s outlays for payment of worker's compensation benefits because [Grede] will be required to reimburse the draws *and* pay the associated bank fees to avoid termination of the letters of credit. If the bonds or letters of credit are terminated (e.g., for failure to reimburse draws or because of the fact of draws), [Grede] will lose its state permits to remain self insured (which is premised on the continuing existence of the letters of credit or bonds) and will stand in violation of the worker's compensation statutes and face a shutdown of operations for that reason.

(Emphasis in original.) On July 2, 2009, the bankruptcy court granted Grede's motion, and authorized Grede "in its sole discretion, to continue its existing worker's compensation programs and to pay worker's compensation benefits and related expenses with respect to Prepetition Worker's Compensation Claims."

¶ 7.   To recap the relevant chronology:

| | |
|---|---|
| June 17, 2009: | Department approved Grede's worker's-compensation-claim settlement with Northcott. Payment was due no later than July 8, 2009. |
| June 30, 2009: | Grede filed for bankruptcy, triggering the automatic stay. |
| July 8, 2009: | Although Grede's payment to Northcott was due, Grede did not pay him. |
| September 18, 2009: | Grede paid Northcott. |
| February 22, 2010: | Department imposed "bad faith" penalty on Grede. |
| October 25, 2010: | Commission affirmed the Department's order. |

## II.

■

¶ 8. In determining whether the Commission could lawfully impose the late-payment penalty, we review its decision and not that of the circuit court. *See Hill v. Labor and Industry Review Commission*, 184 Wis. 2d 101, 109, 516 N.W.2d 441, 445 (Ct. App. 1994). As explained below, although we generally give to administrative agencies one of three levels of deference on legal issues, *see Andersen v. Department of Natural Resources*, 2011 WI 19, ¶ 26, 332 Wis. 2d 41, 55, 796 N.W.2d 1, 8 ("While we are not bound by an agency's conclusions of law, this court has articulated three levels of deference that we may accord an agency's statutory interpretation and application: great weight deference, due weight deference, and no deference."), the Commission concedes that our review of how the bankruptcy act's automatic stay affects the Commission's order is *de novo*. *See City of Brookfield v. Wisconsin Employment Relations Commission*, 87 Wis. 2d 819, 828, 275 N.W.2d 723, 727 (1979) (deference only due to agency within its area of expertise); *see also City of Appleton Police Dep't v. Labor and Industry Review Commission*, 2012 WI App 50, ¶ 14, 340 Wis. 2d 720, 728–729, 813 N.W.2d 237, 241. Further, as the Commission also concedes, its "decision does not discuss whether federal bankruptcy law prohibits the administrative proceeding or the order." Thus, deference is also inappropriate for that reason. *See Aurora Consolidated Health Care v. Labor and Industry Review Commission*, 2012 WI 49, ¶ 52, 340 Wis. 2d 367, 386, 814 N.W.2d 824, 833.

¶ 9. As we have seen, 11 U.S.C. § 362(a), as material, prohibits a wide variety of actions against a bankruptcy petitioner, except "an action or proceeding by a

governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment." § 362(b)(4). We are, of course, bound by the bankruptcy act because of the Supremacy Clause, U.S. Const. art. VI, cl. 2. *See Perez v. Campbell*, 402 U.S. 637, 649–652 (1971).

¶ 10.   In applying the statutes, we start with their words. *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 663, 681 N.W.2d 110, 124. If those words are plain, that ends our analysis. *See Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519, 522 (1996). The parties do not dispute that under WIS. STAT. § 102.18(1)(bp), the Department may award a penalty for the late payment of a worker's-compensation claim. The question is whether Grede's June 30, 2009, bankruptcy filing changed that here. The answer requires an analysis of 11 U.S.C. § 362.

¶ 11.   As we have seen, 11 U.S.C. § 362(a)(1) stays "the commencement or continuation" of actions "to recover a claim against the debtor that arose before" the filing of the bankruptcy petition. Additionally, § 362(a)(2) stays "enforcement, against the debtor or against property of the estate, of a judgment obtained before" the petition's filing. Further, § 362(a)(6) stays "any act to collect, assess, or recover a claim against the debtor that arose before" the petition's filing.

¶ 12.   The Commission argues that the penalty claim against Grede arose *after* the June 30, 2009, filing because Grede was not in default of the Department's June 17, 2009, order until it did not make the required payment by July 8, 2009. But, under §§ 362(a)(1), (2), &

(6), the automatic stay, triggered by the June 30 filing, prevented enforcement of the Department's June 17 order as of June 30 (although, as we have seen, Grede got a bankruptcy-court order permitting Grede to make worker's-compensation payments "in its sole discretion," given the competing needs set out in Grede's motion and accepted by the bankruptcy-court order). Thus, as a result of the automatic stay, Grede *could not be in default* of its obligation to Northcott under the Department's June 17 order because it was entered before the June 30 filing, and the payment directed by that order was not due until July 8, 2009. Simply put, the automatic stay froze Grede's obligation to pay claims that were not yet due, including Northcott's.

¶ 13.   The Commission argues, however, that the "police and regulatory power" provision of 11 U.S.C. § 362(b)(4), trumped the stay, and permitted both post-petition enforcement of the June 17, 2009, Department order and the Commission's imposition of the penalty for late payment. We disagree.

¶ 14.   First, as we have seen, 11 U.S.C. § 362(b)(4) specifically excludes from its "police and regulatory power" exception from the automatic stay the "enforcement of . . . a money judgment." As a reminder, § 362(b)(4), as material, exempts from the automatic stay:

> the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, *including the enforcement of a judgment other than a money judgment,* obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

527

(Emphases added.) The Department's June 17, 2009, order was, in essence (only the title of the document is different), a "money judgment," and was thus excluded from § 362(b)(4)'s "police and regulatory power" exception from the automatic stay. *See Securities and Exchange Commission v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000) (equating, without discussion, the use in 11 U.S.C. § 362 of word "judgment" with a document denominated as an "order").

¶ 15.  Second, the pivotal case on which both parties rely, *Industrial Commission of Ohio v. Mansfield Tire and Rubber Company*, 660 F.2d 1108 (6th Cir. 1981), recognizes that although under 11 U.S.C. § 362(b)(4), a state agency like the Department could *adjudicate* a worker's-compensation dispute, the agency could not enforce against the bankruptcy-petition debtor an order to pay.

¶ 16.  Mansfield Tire filed its chapter 11 bankruptcy petition on October 1, 1979. *Mansfield Tire*, 660 F.2d at 1110. Until November 1, 1978, it was a self-insurer under Ohio's worker's compensation laws. *Ibid.* It then "elected to insure future workers' compensation liability by paying into the State Insurance Fund the amount of premium as fixed by the Industrial Commission" of Ohio. *Ibid.* "For those claims which arose prior to November 1, 1978, Mansfield continued to pay benefits directly to its employees." *Ibid.* "On September 19, 1979, Mansfield ceased paying the pre-November 1, 1978, self-insured claims and thus became, as regards those claims, a 'non-complying employer' under" Ohio law. *Ibid.*

¶ 17.  After Mansfield Tire filed its chapter 11 petition, the Ohio Industrial Commission sought relief from the automatic stay. *Id.*, 660 F.2d at 1111. The bankruptcy court ultimately denied the request, hold-

ing that the "police and regulatory power" exemption of 11 U.S.C. § 362(b)(4) did not apply. *Mansfield Tire*, 660 F.2d at 1111. *Mansfield Tire* reversed, noting a distinction between, on the one hand, a state agency's *administration* of the state's worker's compensation laws, and the agency's *adjudication* of disputes under those laws, and, on the other hand, the agency's attempt *to enforce* the results of its adjudication against the debtor's property:

> [W]e find that the administration of workers' compensation claims by the State of Ohio and the agencies created for that purpose is a valid exercise of the police or regulatory power of a governmental unit. The activity thus falls within the exception of 11 U.S.C. s 362(b)(4) and the Bankruptcy Court erred in refusing to vacate the automatic stay of s. 362(a)(1) . . . .
>
> *[O]ur holding does not carry the effect of actually allowing a claim of the industrial Commission against the estate of the debtor.* This is a matter which would have to be handled in the Bankruptcy Court when it is filed there, along with the other claims against the estate. Our decision allows the State of Ohio, the Industrial Commission, and the Bureau of Workers' Compensation to proceed forthwith in the administration of workers' compensation claims brought by employees of Mansfield Tire & Rubber Company.

*Id.*, 660 F.2d at 1114–1115 (emphasis added). *See also Brennan*, 230 F.3d at 71–72 (recognizing that under 11 U.S.C. § 362(b)(4) government agencies can take steps short of, but not including, " 'enforcement of a . . . money judgment' ") (quoted source and emphasis omitted).

¶ 18. Thus, under *Mansfield Tire*, although the Ohio Industrial Commission could determine what worker's-compensation benefits the company's employ-

ees were owed, collection outside of the bankruptcy court's jurisdiction and under Ohio law could only be against either the Industrial Commission or against the worker's-compensation sureties.[4] The result in *Mansfield Tire* is thus consistent with the clear language of 11 U.S.C. § 362(b)(4), namely that the exemption from the automatic stay does not encompass the enforcement of a "money judgment" against the debtor. Accordingly, as we have already noted, the Department's order of June 17, 2009, which required payment by July 8, 2009, could not be enforced once the automatic stay was triggered on June 30, 2009, except, as the bankruptcy court order provides, insofar as Grede, "in its sole discretion," decided to pay it. Accordingly, Grede was not in default, and no late-payment penalty could be assessed.

---

[4] *Industrial Commission of Ohio v. Mansfield Tire and Rubber Company*, 660 F.2d 1108, 1115 (6th Cir. 1981), explained:

Under the Ohio Workers' Compensation laws, if a "self-insured" employer in Ohio does not make payments to an injured employee who is entitled to benefits, the provisions of Ohio Rev. Code s 4123.75 take effect. Upon determination that an injured employee of a "self-insured" employer is entitled to benefits, an order is issued by the Industrial Commission to the employer to make payment. If the employer fails to pay, a hearing is held to determine whether the "self-insured" employer is in "non-compliance" with the law. Such a finding by the Industrial Commission is a prerequisite to triggering the liability of the surety on the bond posted to insure compliance by the "self-insured" employer. If the "self-insured" employer is found to be in "non-compliance," payment is made by the Industrial Commission from the State Insurance Fund. In any case, the Industrial Commission is liable to the injured employee for his benefits. Thus the Industrial Commission stands in the position of codebtor with the "self-insured" employer for the claim of the injured employee. Likewise, the surety stands as a codebtor with the "self-insured" employer to the claim of Industrial Commission for the amount of benefits provided to the employee from the State Insurance Fund.

¶ 19. Based on the foregoing, we need not decide whether under WIS. STAT. § 102.23 (judicial review of Commission orders) the Commission's order upholding the Department's award of the late-payment penalty was supported by the requisite legal analysis and evidence. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

*By the Court.*—Order reversed.