**In re CONTINENTAL MINERALS CORP., Debtor.**

Bankruptcy No. BK–S–81–0758–RCJ.

United States Bankruptcy Court,
D. Nevada.

Sept. 30, 1991.

Terry V. Leavitt, Las Vegas, Nev., for trustee.

Jeffrey L. Eskin, Las Vegas, Nev., for movant.

## MEMORANDUM DECISION RE TRUSTEE'S OBJECTION TO CLAIM OF NEVADA EMPLOYMENT SECURITY DEPARTMENT

ROBERT CLIVE JONES, Chief Judge.

Debtor Continental Minerals Corporation ("Debtor" or "Continental") filed a petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330, in 1981. The case was subsequently converted to one under Chapter 7 of the Code and a trustee was appointed.

On March 19, 1991, the trustee filed an objection to the claim of the Nevada Employment Security Department ("Department"). The Department's claim was for unpaid pre-petition unemployment compensation contributions. The Department had sought priority status for the contributions pursuant to Bankruptcy Code § 507(a)(7)(D). The trustee argued that the contributions did not qualify for priority treatment and should instead be treated as unsecured claims.

After briefing and oral argument by the parties, the court took the matter under submission. For the reasons stated below, the court concludes that the contributions do qualify for priority treatment as an "employment tax" as defined in section 507(a)(7)(D). This memorandum decision shall constitute the court's findings of fact and conclusions of law. A separate order shall be entered consistent with this decision.

## DISCUSSION

Bankruptcy Code section 507(a)(7)(D) provides priority status to certain claims, including:

[A]llowed unsecured claims of governmental units, only to the extent that the claims are for—

> (D) an employment tax on a wage, salary, or commission of a kind specified in paragraph (3) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; ....

11 U.S.C. § 507(a)(7)(D). A claim is entitled to priority under section 507(a) if (1) it is a tax as defined by federal law, and (2) it fits within the definition of section 507(a)(7)(D). *See In re O.P.M. Leasing Services, Inc.*, 60 B.R. 679, 680 (Bankr. S.D.N.Y.1986).

### 1. *Unemployment Contributions as Taxes*

■ Whether a payment is a tax is a matter of federal law. A state's determination that something is a tax is persuasive but not binding. *New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941).

In *In re Lorber Ind. of California, Inc.*, 675 F.2d 1062 (9th Cir.1982), the Ninth Circuit identified four elements that characterize a payment to a government agency as a tax under federal law. The payment is a tax if it is (a) an involuntary pecuniary burden imposed on individuals or property; (b) imposed by, or under the authority of, the legislature; (c) for public purposes such as for defraying expenses of government or governmental undertakings; (d) imposed under the police or taxing power of the state. *Id.* at 1066 (citing *In re Farmers Frozen Food Co.*, 221 F.Supp. 385, 387 (N.D.Cal.1963)).

■ The trustee argues that the contributions due under the Nevada Unemployment Compensation Law ("NUCL"), NRS §§ 612.01–.760, are not taxes for purposes of § 507. The trustee points to seven characteristics of the Nevada contributions that support his position: (1) The payments are referred to in the NUCL as "contributions" not "taxes," NRS § 612.535(1); (2) if an employer files bankruptcy, the contributions are to be "treated as" taxes, NRS § 612.650(2);[1] (3) the contributions are not a general levy, but are imposed only upon certain employers; (4) employers not covered by the NUCL may elect to be covered by it, NRS § 612.565; (5) contributions are treated like insurance premiums in that rates are raised and lowered based upon various risk factors, NRS § 612.550; (6) the fund created by the NUCL is not part of the general revenues of the state, but is instead a separate and distinct fund, NRS §§ 612.585(1) and .590(8); (7) if the fund created under the NUCL is abolished, the moneys in it are not turned over to the state, but rather to the executive director of the Department for distribution in accordance with NRS chapter 612, NRS § 612.600. Based upon these factors, the trustee argues that the court should "side with those cases that find that payments to the Nevada Employment Security Department are not taxes, but rather contributions not entitled to priority treatment."

Unfortunately, there are no cases that make this determination one way or the other. The case most analogous to the one at bar is *In re Skjonsby Truck Line, Inc.*, 39 B.R. 971 (Bankr.D.N.D.1984). There, the bankruptcy court concluded that contributions to the North Dakota unemployment compensation fund, which is very similar to the NUCL, were taxes that came within the ambit of Bankruptcy Code § 507(a)(7)(D). *Id.* at 973. The court reasoned that the contributions were involuntary in that they were imposed upon any employer that elected to do business in the state and were used for the public good—i.e. "to provide a stable and productive economy throughout the state." *Id.*

I agree with the court in *Skjonsby*. Applying the *Lorber* factors to the NUCL, I

---

**1.** Specifically, NRS § 612.650(2) provides:

In the event of an employer's adjudication in bankruptcy, judicially confirmed extension proposal, composition or other proceeding in bankruptcy, contributions then or thereafter due are entitled to the same priority as is afforded for taxes due to states.

conclude that the contributions at issue here are taxes for purposes of § 507. First, for those employers covered by the NUCL, the payments are involuntary. That the contributions are not imposed on every single employer in the state does not mean they are not an "involuntary pecuniary burden" imposed on employers. Second, the NUCL was enacted by the Nevada Legislature and is therefore clearly "imposed by, or under the authority of, the legislature." Third, the NUCL was enacted for "public purposes"—i.e., providing benefits to unemployed workers who otherwise might be forced onto other public assistance programs. Finally, the NUCL was imposed under the taxing power of the state.

Accordingly, I conclude that the contributions to the Fund are taxes for purposes of § 507(a)(7). The remaining question is whether the contributions are the type of taxes covered by § 507(a)(7)(D).

### 2. Unemployment Contributions as Priority Taxes

Section 507(a)(7)(D) provides priority treatment for "an employment tax on a wage, salary, or commission...." The trustee argues that the NUCL contributions at issue here are not covered by § 507(a)(7)(D) because "the intention of Congress in passing [that section] was not to extend priority treatment to state unemployment compensation contributions, but rather to assure that the employers [sic] portion of Federal taxes [such as FICA and FUTA] are paid on a timely basis."

There is, however, no statutory basis for the distinction urged by the trustee. Section 507(a)(7)(D) contains no language indicating that Congress intended any distinction between federal and state employment taxes. Moreover, the legislative history of the statute contains no reference to state versus federal taxes or any other language indicating that such a distinction was intended. The debtor in the *Skjonsby Truck Line* case raised the same argument as the trustee asserts in the case at bar. The court there reached the same conclusion I reach here: there is no statutory basis for distinguishing between state and federal

employment taxes. *See* 39 B.R. at 974. Accordingly, I conclude that the claim of the Nevada Employment Security Department is an employment tax entitled to priority under Bankruptcy Code § 507(a)(7)(D).