Wisconsin DEPARTMENT OF REVENUE,
Petitioner-Appellant,

v.

ORBITZ, L.L.C., Respondent-Respondent,

Wisconsin TAX APPEALS COMMISSION,
Respondent.

Court of Appeals

*No. 2015AP200. Submitted on briefs August 14,
2015.—Decided February 11, 2016.*

2016 WI App 22

(Also reported in 877 N.W.2d 372.)

594

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Maria S. Lazar*, assistant attorney general, and *Brad D. Schimel*, attorney general.

On behalf of the respondent-respondent, the cause was submitted on the briefs of *Timothy G. Schally* and *Robert L. Gordon* of *Michael Best & Friedrich LLP*, Madison, and *Elizabeth B. Herrington* of *McDermott Will & Emery LLP*, Chicago, Illinois.

Before Kloppenburg, P.J., Sherman and Blanchard, JJ.

¶ 1. SHERMAN, J.   The Wisconsin Department of Revenue (DOR) appeals an order of the circuit court affirming a decision by the Tax Appeals Commission (Commission) that reversed tax assessments imposed by DOR against Orbitz, L.L.C. DOR contends that the Commission wrongly concluded that Orbitz's reservation facilitation services are not among the taxable services enumerated in Wis. Stat. § 77.52(2)(a)1. (2005–06).[1] For the reasons discussed below, we affirm.

## BACKGROUND

¶ 2.   The following facts are taken from the Commission's May 2014 decision.

¶ 3.   Orbitz is an online travel company that contracts with hotels, which are not owned, operated, or managed by Orbitz, for the right to facilitate reser-

---

[1] All references to the Wisconsin Statutes in this case are to the 2005–06 version unless otherwise noted. Wisconsin Stat. § 77.52(2)(a) has since been amended; however, those changes are not relevant to the present appeal.

vations for, and in the name of, travelers at "[n]et [r]ates," that are determined by the hotels. Via Orbitz's website, travelers can compare hotel availability and offerings throughout the world, including Wisconsin, and reserve hotel rooms.

¶ 4. The hotels that contract with Orbitz do not set aside certain rooms exclusively for Orbitz, nor does Orbitz pay hotels for rooms in advance and then turn around and resell them to travelers. Instead, Orbitz accesses the inventory databases of the hotels it has contracted with, checks availability for dates when the traveler desires to stay at the hotel, and makes a reservation request to the desired hotel in the traveler's name if a room is available for booking. When a traveler selects an available hotel room, Orbitz's website displays the total cost of the room to the traveler, which consists of two components: (1) the " 'average price per night,' " which is the "[n]et [r]ate" the hotel will receive plus a markup amount which will be retained by Orbitz; and (2) " 'taxes and fees,' " which includes a tax recovery charge (the estimate of taxes payable on the hotel's net rate) and any additional service fees or other applicable fees.

¶ 5. A traveler who books a hotel room through Orbitz pays Orbitz for a room upfront. Upon confirmation of the hotel booking, the hotel usually sends a confirmation number to Orbitz confirming the booking and the name of the traveler and Orbitz sends an email confirmation to the traveler. When the traveler arrives at the hotel, the hotel confirms the existence of the booking. If the hotel is unable to accommodate the reservation for any reason, the hotel, not Orbitz, is responsible for finding alternative accommodations for the traveler. After the traveler checks into a room, the hotel collects payment from Orbitz for the hotel's "[n]et

[r]ate," the applicable taxes due on the "[n]et [r]ate," and any hotel-imposed fees. The hotel then remits the taxes owing on the "[n]et [r]ate" to the appropriate taxing authority. The markup amount is retained by Orbitz. During the time periods at issue in this case (2001–2006), retail sales tax was not collected from travelers on the markup amount, nor was retail sales tax remitted to DOR by Orbitz on the markup amounts Orbitz collected.

¶ 6.   In 2008, DOR notified Orbitz that Orbitz owed an additional $111,253.39 in retail sales tax for the tax periods ending December 31, 2001, through December 31, 2006, on the markup amounts Orbitz collected as part of its reservation facilitation services. DOR asserted that Orbitz is an " 'internet lodging provider' " that provides lodging throughout Wisconsin and as such, the markup amount retained by Orbitz is subject to taxation under WIS. STAT. § 77.52(2)(a)1. The amount assessed against Orbitz included the tax DOR maintained was owing on the markup amounts retained by Orbitz, as well as interest and late filing fees.

¶ 7.   Orbitz petitioned DOR for a redetermination of its tax liability, which DOR denied. Orbitz appealed DOR's denial of its petition to the Commission. Both Orbitz and DOR moved the Commission for summary judgment. The Commission granted Orbitz's motion and denied DOR's motion. The Commission concluded that Orbitz does not provide a service that is taxable under WIS. STAT. § 77.52(2)(a)1., stating, "[Section] 77.52(2)(a) does not clearly impose a tax on the mark[]up compensation Orbitz receive[d] from its customers for its reservation facilitation services; such ambiguity must be resolved in [Orbitz's] favor and against extending the reach of the taxing authority."

¶ 8. DOR sought judicial review of the Commission's decision. The circuit court affirmed the Commission's decision. DOR appeals.

## DISCUSSION

¶ 9. The primary issue in this case is whether Orbitz's activities were taxable under WIS. STAT. § 77.52(2)(a)1. Before we address this issue, we must first determine our standard of review.

### A. Standard of Review

¶ 10. In reviewing a decision of an administrative agency, it is the decision of the agency, rather than the decision of the circuit court, which is reviewed. *Hilton v. DNR*, 2006 WI 84, ¶ 15, 293 Wis. 2d 1, 717 N.W.2d 166. This case requires us to review the Commission's interpretation of WIS. STAT. § 77.52(2)(a)1. Statutory interpretation presents a question of law, which is subject to our independent review. *State v. Cole*, 2000 WI App 52, ¶ 3, 233 Wis. 2d 577, 608 N.W.2d 432. In interpreting statutory language, we consider the scope, context, and structure of the statute, and in a manner that "avoid[s] absurd or unreasonable results." *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. If our process of analysis yields a plain meaning, there is no ambiguity and we apply that plain meaning. *Id.*

¶ 11. An appellate court is not bound by an administrative agency's interpretation of a statute. *Neenah Foundry Co. v. LIRC*, 2015 WI App 18, ¶ 16,

599

360 Wis. 2d 459, 860 N.W.2d 524. Nevertheless, depending on the circumstances, we accord an agency's statutory interpretation one of three levels of deference—no weight, due weight, or great weight. *City of Kenosha v. LIRC*, 2011 WI App 51, ¶ 8, 332 Wis. 2d 448, 797 N.W.2d 885. We have explained the levels of deference and when they apply as follows:

> A reviewing court accords an agency's statutory interpretation no deference when the issue is one of first impression, when the agency has no experience or expertise in deciding the legal issue presented, or when the agency's position on the issue has been so inconsistent as to provide no real guidance. When no deference to the agency decision is warranted, the court interprets the statute independently and adopts the interpretation that it deems most reasonable.

> A reviewing court accords due weight deference when the agency has some experience in an area but has not developed the expertise that places it in a better position than the court to make judgments regarding the interpretation of the statute. When applying due weight deference, the court sustains an agency's interpretation if it is not contrary to the clear meaning of the statute—unless the court determines that a more reasonable interpretation exists.

> Finally, a reviewing court accords great weight deference when each of four requirements are met: (1) the agency is charged by the legislature with the duty of administering the statute; (2) the agency's interpretation is one of long standing; (3) the agency employed its expertise or specialized knowledge in forming its interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. When applying great weight deference, the court will sustain an agency's reasonable statutory interpretation even if the court concludes that another interpretation is equally or

600

more reasonable. The court will reverse the agency's interpretation if it is unreasonable—if it directly contravenes the statute or the state or federal constitutions, if it is contrary to the legislative intent, history, or purpose of the statute, or if it is without a rational basis.

*MercyCare Ins . Co. v. Wisconsin Comm'r of Ins.*, 2010 WI 87, ¶¶ 29–30, 328 Wis. 2d 110, 786 N.W.2d 785 (internal citations omitted).

¶ 12.  The parties disagree over the appropriate level of deference we should accord the Commission's interpretation and application of Wis. Stat. § 77.52(2)(a)1. DOR argues that there are two reasons why we should give no deference to the Commission's interpretation of § 77.52(2)(a)1. We reject both.

¶ 13.  First, DOR argues that "the Commission's interpretation of Wis. Stat. § 77.52(2)(a)1. as it applies to Orbitz's online lodging sales is an issue of first impression." As we understand it, what DOR means to argue is that although the Commission has extensive experience interpreting § 77.52(2)(a)1., it has never before applied § 77.52(2)(a)1. to markup amounts collected by an online facilitator such as Orbitz on lodging reservations made vis-a-vis the online facilitator.

¶ 14.  DOR's first impression argument misconstrues the meaning of "first impression" in this context. " 'We have consistently held that an agency decision is not automatically one of first impression and subject to de novo review simply because the agency has been presented with a particular fact situation it has not previously ruled upon.' " *Neenah Foundry Co.*, 360 Wis. 2d 459, ¶ 19 (quoted source omitted). "Rather, an

601

issue of first impression refers to a situation in which an agency is interpreting a statutory provision for the first time." *Id.* Here, as in *Neenah*, there is no question that the Commission has previously interpreted WIS. STAT. § 77.52(2)(a)1. *See Associated Training Servs. Corp. v. DOR*, Nos. 03–S-286(P) and 03–S-287(P) (Wis. Tax Appeals Commission, Nov. 28, 2005); *Hergert v. DOR*, No. 99–S-35 (Wis. Tax Appeals Commission, Jan. 8, 2001).

¶ 15. DOR argues in the alternative that we should give no deference to the Commission because "the 'agency's position on [this] issue has been so inconsistent [such that it] provide[s] no real guidance.' " (Quoting *Clean Wisc., Inc. v. PSC*, 2005 WI 93, ¶ 43, 282 Wis. 2d 250, 700 N.W.2d 768.) DOR does not explain to this court how the Commission's position has been inconsistent. As best we can tell, DOR refers to the Commission's decision in *Hergert*, wherein the Commission determined that the defendant, who facilitated the rental of private homes, was liable for retail sales tax under WIS. STAT. § 77.52(2)(a)1. for amounts paid to him for the cost of the rental. However, *Hergert* is factually distinct from the present case.

¶ 16. In *Hergert*, the defendant supplied all rental contracts between the homeowners and the renters and the defendant was listed as a signatory and sometimes a party to the contract; the defendant negotiated the rental amounts with the homeowners and renters; the defendant met with each renter to issue keys to the rental properties and the keys would generally be returned to him; the defendant provided additional services for a fee, including catering food, commercial shipping, fax and copy machines, rental cars, rollaway beds, and maid services; on one occa-

sion, the defendant paid the cost of one refund and was not reimbursed by the homeowner; and renters were instructed to contact the defendant in the event a repair was needed. *Hergert v. DOR*, No. 99–S-35, 1–2. In the present case, it is undisputed that travelers contract for lodging with the hotels, not Orbitz, and that Orbitz provided no services to the travelers other than making reservations with hotels on behalf of travelers. DOR does not explain why the factual differences between *Hergert* and the present case are irrelevant or why, despite the factual differences, the Commission's position is inconsistent. Accordingly, we do not consider the inconsistency argument any further.

¶ 17. For the reasons stated above, we reject DOR's contention that the Commission's decision is entitled to no deference. The question remains whether due weight deference or great weight deference is appropriate. Orbitz argues that the Commission's decision is entitled to great weight deference. However, we need not determine whether the Commission's decision is entitled to due weight or great weight deference because we conclude that regardless of whether we apply due weight or great weight deference, our decision is the same. That is to say, we conclude that the Commission's interpretation of Wis. Stat. § 77.52(2)(a)1. is reasonable and the alternative interpretations proposed by DOR are not more reasonable.

## B. The Commission's Conclusion

¶ 18. Between 2001 and 2006, the time period at issue in this case, Wis. Stat. § 77.52(2)(a)1. provided:

603

**(2)** For the privilege of selling, performing or furnishing the services described under par. (a) at retail in this state to consumers or users, a tax is imposed upon all persons selling, performing or furnishing the services at the rate of 5% of the gross receipts from the sale, performance or furnishing of the services.

(a) The tax imposed herein applies to the following types of services:

1. *The furnishing of rooms or lodging to transients by hotelkeepers, motel operators and other persons furnishing accommodations that are available to the public* . . . . (Emphasis added.)

¶ 19. In interpreting and applying WIS. STAT. § 77.52(2)(a)1., the Commission determined that in order for Orbitz's markup to be taxable under § 77.52(2)(a)1.: (1) Orbitz's activities must have constituted the "furnishing of rooms or lodging to transients by hotelkeepers, motel operators and other persons furnishing accommodations that are available to the public"; or (2) § 77.52(2)(a)1. must apply to those selling the service of making reservations on behalf of members of the public with those who "furnish" lodging, and Orbitz must have been selling that service of making reservations.

¶ 20. The Commission first determined that Orbitz did not "furnish[] . . . rooms or lodging" within the meaning of WIS. STAT. § 77.52(2)(a)1. In reaching that conclusion, the Commission stated that it is not clear from the statute "whether 'furnishing' includes establishing, arranging for or, as [DOR] characterizes Orbitz's activities, 'facilitating' the reservation arrangements, or whether it simply means literally providing the physical accommodations." The Commission pointed out that "furnish" has been defined as " '(1) to

604

provide with what is needed; especially: to equip with furniture; (2) supply, give,' " and that in *Katzman v. State*, 228 Wis. 2d 282, 292, 596 N.W.2d 861 (Ct. App. 1999), we adopted the following definition of furnish: "provide or supply with what is needed, useful, or desirable," neither of which provide any real help in determining whether "furnishing" encompasses Orbitz's facilitation services. The Commission then found that Orbitz "does not furnish lodging to travelers in any traditional sense of the word" and that Orbitz "lacks the essential functions and characteristics of a business which provides lodging accommodations." The Commission pointed out that Orbitz does not own hotels or motels, does not check people in, or provide them with access to the rooms, and does not provide cleaning, room, or maintenance services.

¶ 21. However, the Commission also concluded that, as to this first topic of directly furnishing, "furnishing" is capable of being understood to include establishing arranging for, or facilitating reservations, as well as the actual provision of physical accommodations. In other words, the Commission found the language ambiguous on this first topic.

¶ 22. The Commission observed that when a taxing statute is ambiguous, the ambiguity must be resolved in favor of the taxpayer. *See DOR v. Milwaukee Refining Corp.*, 80 Wis. 2d 44, 48–49, 257 N.W.2d 855 (1977) (" [W]here ambiguity and doubt exist [in a taxing statute], it must be resolved in favor of the person upon whom it is sought to impose the tax."). Applying this rule, the Commission concluded that Orbitz should receive the benefit of the more favorable reading of the statute.

¶ 23. Turning to the second way in which Orbitz's reservation facilitation services could be taxable

under Wis. Stat. § 77.52(2)(a)1., the Commission concluded that § 77.52(2)(a)1. does not impose a sales tax on those selling the service of making reservations on behalf of members of the public with those who "furnish[] rooms or lodging." The Commission pointed out that other sections of § 77.52(2)(a)1. include language taxing the sale of various services, and that if the Legislature had intended to tax the service of making hotel room reservations on behalf of members of the public, without furnishing rooms, "subsection (a)1. could have been worded as '*the sale of* the furnishing of rooms or lodging.'" The Commission stated that § 77.52(2)(a)1. does not contain the phrase "the sale of" in front of the phrase "[t]he furnishing of rooms," and that to read the statute otherwise requires "linguistic exercises of substitution" that are not "reasonable or even coherent."

¶ 24. We conclude that the Commission's interpretation is not contrary to the clear meaning of the statute and that there is not another, more reasonable interpretation of the statutory language. We agree with the Commission that it is not clear from Wis. Stat. § 77.52(2)(a)1. whether "furnishing," as the term is used in that subdivision, encompasses those, who like Orbitz, facilitate reservation arrangements with hotelkeepers and motel operators. We conclude that in light of this ambiguity, the Commission reasonably interpreted the statute as not imposing a sales tax on Orbitz. We also conclude that the Commission's conclusion that § 77.52(2)(a)1. does not impose a tax on those selling the service of making hotel room reservations is not contrary to the clear meaning of the statute. The Commission looked at the entire statute and reasonably concluded that the omission of the words "[t]he sale of" in subdivision 1, indicates that the

legislature did not intend to impose a tax on those selling the services of making hotel reservations but not actually furnishing the accommodations.

¶ 25. DOR's arguments to the contrary do not persuade us that the Commission's interpretation is contrary to the clear meaning of the statute or that a more reasonable interpretation exists. DOR argues that the statutory language stating that "a tax is imposed upon all persons selling, performing or furnishing the services" described in WIS. STAT. § 77.52(2)(a)1. indicates that not only are those who furnish the enumerated services to be taxed, but also those who sell the service of making reservations. We are not persuaded. We agree with the Commission that DOR's reading of the statute requires a "linguistic exercise[] of substitution" that results in the taxing of the service of selling " 'the sale of' various types of services." We agree with the Commission that such a reading of the statute is not reasonable.

¶ 26. DOR argues that Orbitz's markup is taxable under WIS. STAT. § 77.52(2)(a)1. based on agency principles. DOR argues that Orbitz "made its sales on behalf of the hotels," and is therefore an agent of the hotels with whom Orbitz makes reservations. DOR argues that because Orbitz is the agent of the hotels who furnish the taxable service of furnishing rooms, Orbitz's markup is also taxable. DOR misconstrues the relationship between Orbitz and the hotels. Orbitz does not make reservations on behalf of the hotels, but rather makes reservations with the hotels *on behalf of the travelers*. We are not persuaded that Orbitz is an agent of the hotels and, therefore, reject this argument.

¶ 27. DOR argues that Orbitz's markup is taxable under Wɪs. Sᴛᴀᴛ. § 77.52(2)(a)1. because paragraph (a) imposes a sales tax on the "gross receipts," which is defined as "the total amount of the sale . . . price . . . from . . . taxable services." *See* Wɪs. Sᴛᴀᴛ. § 77.51(4)(a). DOR argues that if any part of the sales price was taxable, all of it, including Orbitz's markup, was taxable. However, § 77.52(2)(a)1. imposes a sales tax on the total amount of the sale of *taxable services*. We have already explained why the service provided by Orbitz is not taxable.

¶ 28. DOR argues that Orbitz's markup is taxable under Wɪs. Sᴛᴀᴛ. § 77.52(2)(a)1. because separating Orbitz's markup from the price paid for the hotel room is inconsistent with the decisions in other jurisdictions. The cases cited to us by DOR interpret their own taxing statutes, not the particular language found in § 77.52(2)(a)1. The fact that jurisdictions have interpreted different statutory language to reach different results does not persuade us that the Commission's interpretation of the language in § 77.52(2)(a)1. is not the most reasonable among the alternatives.

## CONCLUSION

¶ 29. For the reasons discussed above, we affirm.
*By the Court.*—Order affirmed.