COURT OF APPEALS
DECISION
DATED AND FILED

May 10, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP2002**

STATE OF WISCONSIN

Cir. Ct. No.  2020CV2371

IN COURT OF APPEALS
DISTRICT I

---

WISCONSIN DEPARTMENT OF WORKFORCE DEVELOPMENT,

PLAINTIFF-RESPONDENT,

V.

LABOR AND INDUSTRY REVIEW COMMISSION,

DEFENDANT-APPELLANT,

SUSAN A. WOZNIAK AND MEIJER STORES LIMITED PARTNERSHIP,

DEFENDANTS.

---

APPEAL from an order of the circuit court for Milwaukee County: WILLIAM S. POCAN, Judge. *Affirmed*.

Before Donald, P.J., Dugan and White, JJ.

¶1    DONALD, P.J. The Labor and Industry Review Commission (LIRC) challenges a circuit court order reversing its decision to grant unemployment benefits to Susan A. Wozniak.  As discussed below, we conclude that Wozniak's use of derogatory, homophobic language about her coworker's sexual orientation constituted misconduct, pursuant to WIS. STAT. § 108.04(5)(d) (2019-20),[1] and as a result, she is not entitled to unemployment benefits.

## BACKGROUND

¶2    On October 17, 2017, Wozniak began working as a part-time greeter for Meijer Stores Limited Partnership (Meijer).  Approximately, seven weeks later, Wozniak became angry that a coworker, who was supposed to be working with her as a greeter at the front of the store, was not doing his job.  Wozniak expressed her irritation in a conversation with two cashiers.  Several days later, one of the cashiers reported the conversation to management.  The cashier reported that Wozniak had referred to the coworker as "pretty boy," "fairy," and "fruit loop," said that he was gay, and that "the way he skipped around the store made her sick."  Neither of the cashiers testified at the hearing in this matter.

¶3    Management interviewed Wozniak.  Wozniak denied calling her coworker a "fairy."  She provided a written statement in which she admitted to calling her coworker a "pretty boy," and stated that if she mentioned other things, she "didn't mean it and should not have said it."  Wozniak was suspended pending further investigation.  Wozniak had not previously been subject to discipline.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶4    On December 15, 2017, Meijer discharged Wozniak for making "discriminatory remarks towards a team member, calling him a 'fruit loop' and a 'fairy,' and commenting on how he skipped around and it made her sick."

¶5    Wozniak filed a claim for unemployment insurance benefits. Based on the information provided by Wozniak, the Department of Workforce Development (DWD) issued an initial determination on January 12, 2018. DWD found that Wozniak was discharged, but her discharge was not for misconduct or substantial fault connected with her employment. Benefits were, therefore, allowed.

¶6    Meijer appealed. A hearing on the matter was held before a DWD administrative law judge (ALJ). The ALJ found that Wozniak had referred to her coworker as a "pretty boy" and a "fruit loop." The ALJ reversed the initial determination, finding that Wozniak was discharged for misconduct, pursuant to WIS. STAT. § 108.04(5), and, thus, was ineligible for benefits.

¶7    Wozniak petitioned for review of the appeal tribunal decision to LIRC. In a decision dated November 30, 2018, LIRC reversed the ALJ's decision, thus, allowing benefits. Two commissioners found that Wozniak was discharged, but not for misconduct, pursuant to WIS. STAT. § 108.04(5) and (5)(d), or substantial fault, pursuant to § 108.04(5g). One commissioner dissented, finding that Wozniak's comments regarding her coworker's sexual orientation constituted misconduct pursuant to § 108.04(5) and (5)(d), and also substantial fault, pursuant to § 108.04(5g).

¶8    DWD sought judicial review, and on August 16, 2019, the circuit court issued a decision finding that LIRC erred as a matter of law by defining harassment under WIS. STAT. § 108.04(5)(d) as requiring more than one act. The

circuit court remanded the case to LIRC to issue a new decision based on the correct interpretation of the statute.

¶9     Following the remand, LIRC issued a new decision on March 12, 2020.  LIRC again found that Meijer discharged Wozniak, but that her discharge was not for misconduct or substantial fault connected with her employment.  Therefore, Wozniak was eligible for benefits.

¶10    DWD brought an action for judicial review of LIRC's second decision.  The circuit court reversed.  The circuit court found that LIRC erred in finding that Wozniak's comments did not constitute misconduct or substantial fault.

¶11    LIRC appealed that decision to this court.  Additional relevant facts are referenced below.

## DISCUSSION

¶12    "Wisconsin's unemployment compensation statutes embody a strong public policy in favor of compensating the unemployed." *Operton v. LIRC*, 2017 WI 46, ¶31, 375 Wis. 2d 1, 894 N.W.2d 426.  Not all employees, however, are entitled to unemployment benefits.  *Id.*, ¶33.  An individual may be disqualified from receiving benefits if the employer establishes that the individual was discharged under a disqualifying provision.  *Id.*, ¶¶33, 38.

¶13    LIRC utilizes a three-step approach in analyzing discharges.  First, LIRC determines whether the employee was discharged for misconduct by engaging in any of the actions enumerated in WIS. STAT. § 108.04(5)(a)-(g).  If those provisions do not apply, LIRC then determines whether the employee's actions constitute misconduct under § 108.04(5), the codified misconduct

4

definition from ***Boynton Cab Co. v. Neubeck***, 237 Wis. 249, 296 N.W. 636 (1941). Finally, if misconduct is not found, LIRC then determines whether the discharge was for substantial fault, as set forth in § 108.04(5g).

¶14 In this case, LIRC contends Wozniak's discharge was not for misconduct within the meaning of WIS. STAT. § 108.04(5) or (5)(d), or substantial fault under § 108.04(5g).

¶15 As discussed below, we conclude that Wozniak's discharge was for misconduct within the meaning of WIS. STAT. § 108.04(5)(d) and, thus, we affirm the denial of benefits. As a result, we do not address whether Wozniak's discharge was for misconduct within the meaning of § 108.04(5) or substantial fault under § 108.04(5g). *See* ***State v. Blalock***, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (stating that "cases should be decided on the narrowest possible ground").

### A. Principles of Law and Standard of Review

¶16 "On appeal, we review LIRC's decision and not the circuit court's." ***City of Kenosha v. LIRC***, 2011 WI App 51, ¶7, 332 Wis. 2d 448, 797 N.W.2d 885. A reviewing court "may set aside an order of LIRC if LIRC acted 'without or in excess of its powers.'" ***DWD v. LIRC***, 2018 WI 77, ¶12, 382 Wis. 2d 611, 914 N.W.2d 625 (citing WIS. STAT. § 108.09(7)(c)6.a.). LIRC acts without or in excess of its powers if it bases its order on an incorrect interpretation of the law. ***Id.***

¶17 This case requires us to interpret WIS. STAT. § 108.04(5)(d). Statutory interpretation begins with the language of a statute. ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.

If the meaning of a statute is plain, we ordinarily stop our inquiry. *Id.* "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* "A dictionary may be utilized to guide the common, ordinary meaning of words." *Noffke ex rel. Swenson v. Bakke*, 2009 WI 10, ¶10, 315 Wis. 2d 350, 760 N.W.2d 156.

¶18 "Statutory interpretation is a matter of law which we review *de novo*, giving no deference to the agency's legal conclusions." *Cree, Inc. v. LIRC*, 2022 WI 15, ¶13, 400 Wis. 2d 827, 970 N.W.2d 837. "Whether the facts of a case fulfill a legal standard is also a matter of law we review *de novo*." *Id.*[2]

## B. WISCONSIN STAT. § 108.04(5)(d)

¶19 WISCONSIN STAT. § 108.04(5)(d) provides that "[o]ne or more threats or acts of harassment, assault, or other physical violence instigated by an employee at the workplace of his or her employer" constitutes misconduct. The statute does not define harassment.

¶20 Citing Black's Law Dictionary, LIRC defines "harassment" as "a term used in a variety of legal contexts to describe words, gestures, and actions

---

[2] LIRC notes that a reviewing court may accord "due weight" to a commission's experience, technical competence, and specialized knowledge. *See Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, 382 Wis. 2d 496, 914 N.W.2d 21. DWD responds that this standard only applies to general administrative proceedings under WIS. STAT. ch. 227, not unemployment proceedings under WIS. STAT. ch. 108. Even if we assume that due weight may be given in unemployment proceedings under chapter 108, LIRC admits that the interpretation of WIS. STAT. § 108.04(5)(d) is a question of first impression. Thus, LIRC cannot be said to have any level of expertise or specialized knowledge in interpreting § 108.04(5)(d). *See Tetra Tech EC*, 382 Wis. 2d 496, ¶79. Accordingly, we conclude that a *de novo* standard of review is appropriate here.

6

which tend to annoy, alarm, and abuse (verbally) another person."[3] LIRC's decision further states that "[h]arassment may include verbal abuse, epithets, and vulgar or derogatory language, display of offensive cartoons or materials, mimicry, lewd or offensive gestures, and telling of jokes offensive to protected class members."

¶21 DWD agrees with LIRC's definition of harassment. DWD and LIRC disagree, however, as to whether Wozniak's homophobic comments constitute harassment.

¶22 We agree with DWD that Wozniak's homophobic comments qualify as harassment under WIS. STAT. § 108.04(5)(d). The agreed upon definition of harassment includes the use of "derogatory language." As the circuit court observed, Wozniak's comments, which included the use of "pretty boy" and "fruit loop," were "derogatory language" about the coworker's sexual orientation. Whether the comments were made directly to the coworker is of no consequence under the language of § 108.04(5)(d).

¶23 In support of its argument that Wozniak's comments did not constitute misconduct pursuant to WIS. STAT. § 108.04(5)(d), LIRC faults Meijer for not providing a specific definition of harassment, or examples of harassment, in its work rules. LIRC also argues that Meijer did not prove that Wozniak "knowingly" violated Meijer's work rules.

¶24 LIRC, however, reads additional requirements into WIS. STAT. § 108.04(5)(d). Nothing in (5)(d) requires that an employer have an anti-

---

[3] LIRC cites the Sixth edition of Black's Law Dictionary.

harassment policy or rule. Nor does (5)(d) say that an employee must "knowingly harass" or "intend to harass" another. Rather, (5)(d) simply provides that "[o]ne or more threats or acts of harassment … instigated by an employee at the workplace of his or her employer" constitutes misconduct. We will not read additional language into a statute. *See County of Dane v. LIRC*, 2009 WI 9, ¶33, 315 Wis. 2d 293, 759 N.W.2d 571.

¶25 Finally, we note that the dissent emphasizes that Wozniak's homophobic comments were made in the context of a short, private conversation with two co-workers that Wozniak believed were like-minded. *See* Dissent, ¶34. First, the record suggests that at least one of the co-workers was not in fact like-minded or unaffected as Wozniak's comments prompted him or her to report the conversation to management. Second, by the dissent's reasoning, so long as an employee believes a conversation is private with like-minded individuals, his or her comments cannot constitute misconduct under WIS. STAT. § 108.04(5)(d). This is illogical. The statute contains no such limitation. *See County of Dane*, 315 Wis. 2d 293, ¶33.

## CONCLUSION

¶26 Therefore, for the reasons stated above, we conclude that Wozniak was discharged for misconduct pursuant to WIS. STAT. § 108.04(5)(d), and thus, is not entitled to unemployment benefits.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.

No.    2020AP2002(D)

¶27    DUGAN, J. (*dissenting*).    I write separately because I would conclude that Meijer has not met its burden to demonstrate that Wozniak was discharged for misconduct or substantial fault within the meaning of WIS. STAT. § 108.04(5) or § 108.04(5g).    Thus, I would uphold LIRC's decision granting unemployment benefits to Wozniak.    Accordingly, I respectfully dissent.

¶28    Initially, I recite the following facts in addition to those already provided.    Meijer provided a Summary of Work Rules during the agency proceedings.[1]    One rule was entitled "Serious Conduct Leading to Discipline or Discharge" and stated that "[d]iscriminatory acts, sexual harassment or harassment of any nature" is serious conduct leading to discipline or discharge.    The rule does not provide any definition of harassment.    An additional rule entitled "Conduct Leading to Discharge Without Prior Discipline" stated that "[v]iolent behavior of any kind, including provoking or engaging in fighting, threatening, intimidation or coercive conduct, using abusive language, possession of weapons on company property, or interfering with other team members' ability to work" may lead to termination without prior discipline.    Wozniak electronically acknowledged receipt of these rules.

---

[1] The Summary of Work Rules indicates that further explanation can be found in the Company Policies & Procedures.  Meijer bears the burden of demonstrating that Wozniak was discharged for misconduct or substantial fault, and it has not provided its Company Policies & Procedures. *See Operton v. LIRC*, 2017 WI 46, ¶38, 375 Wis. 2d 1, 894 N.W.2d 426.  Thus, this court is restricted to consideration of the Summary of Work Rules that has been provided.

¶29 After the incident in question, Meijer terminated Wozniak's employment, citing to both of the aforementioned workplace rules. Specifically, Meijer provided that Wozniak made "discriminating remarks towards a team member" and deemed Wozniak's remarks "harassment in the workplace." The co-worker who reported Wozniak's remarks to management never testified during the agency proceedings, and no evidence was provided that Wozniak's comments were offensive to her co-workers with whom she spoke or interfered with their ability to work.

¶30 With these additional facts in hand, I proceed to the standard applicable to this case. First, I agree with the Majority that this case presents an issue of statutory interpretation, and as the Majority aptly summarizes the general principles of statutory interpretation, I do not repeat them here.[2] *See* Majority, ¶¶17-18. However, as relevant to my conclusion, it bears repeating that "Wisconsin's unemployment compensation statutes embody a strong public policy in favor of compensating the unemployed." *Operton v. LIRC*, 2017 WI 46, ¶31, 375 Wis. 2d 1, 894 N.W.2d 426. Thus, while not all employees are ultimately entitled to unemployment benefits, we nonetheless must liberally construe the provisions of WIS. STAT. ch. 108 consistent with the strong public policy favoring

---

[2] As the Majority notes, this case does not present the issue of whether Meijer could terminate Wozniak's employment, and I similarly emphasize that this case presents only the issue of whether Wozniak was discharged for misconduct or substantial fault such that she is not entitled to unemployment benefits. "The question is only whether there was statutory 'misconduct.' The principle that violation of a valid work rule may justify discharge but at the same time may not amount to statutory 'misconduct' for unemployment compensation purposes has been repeatedly recognized[.]" *Consolidated Constr. Co., Inc. v. Casey*, 71 Wis. 2d 811, 819-20, 238 N.W.2d 758 (1976). Thus, even if Meijer appropriately discharged Wozniak pursuant to a valid work rule—which is not the question presented here—misconduct must still be analyzed under the meaning of the statute, and while Meijer's work rules are relevant to the analysis, Meijer's work rules are not synonymous with misconduct under the statute.

compensation of the unemployed. *See id.*, ¶¶31-32. Moreover, it is the employer's burden to demonstrate that the employee's termination was due to misconduct or substantial fault. *See id.*, ¶38. With these principles in mind, I turn to the analysis of whether Wozniak was discharged for misconduct or substantial fault within the meaning of either WIS. STAT. § 108.04(5) or § 108.04(5g).

¶31 The Majority concludes that Wozniak was discharged for misconduct within the meaning of WIS. STAT. § 108.04(5)(d) because she engaged in an act of harassment. Majority, ¶¶15, 20-22. It does not reach the issue of misconduct under the general definition or the issue of substantial fault. *Id.*, ¶15. In reaching its conclusion, the Majority adopts the definition of harassment provided by LIRC and concludes that Wozniak's language was derogatory. *Id.*, ¶22. It then ends its analysis there.

¶32 I do not agree with the Majority's conclusion because it fails to consider the language of WIS. STAT. § 108.04(5)(d) in its entirety and consider harassment within its statutory context. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110. Rather, by considering the language of § 108.04(5)(d) in its entirety and interpreting harassment within its statutory context, I would conclude that the harassment that rises to the level of misconduct within the meaning of the statute also requires an element of intent. "Context is important to meaning." *Operton*, 375 Wis. 2d 1, ¶28 (citation omitted). Further, I would conclude that this intent is missing from Wozniak's conduct, and therefore, Wozniak did not engage in misconduct as defined by § 108.04(5)(d).

¶33 In full, WIS. STAT. § 108.04(5)(d) defines misconduct as "[o]ne or more threats or acts of harassment, assault, or other physical violence instigated by

3

an employee at the workplace of his or her employer." Reading the statute as a whole and placing "harassment" within its statutory context also requires considering whether Wozniak's conduct was "instigated," meaning whether Wozniak's comments "goad[ed]" or "incite[d]" harassment. *See Instigate*, BLACK'S LAW DICTIONARY (11th ed. 2019). As the definition of instigate suggests, there has to be some intention behind the action in order to goad or incite harassment. I would conclude that this intention to goad or incite harassment towards her co-worker of whom Wozniak was privately complaining is missing.

¶34 As even the Majority describes, Wozniak used her chosen language to refer to a co-worker with whom she was frustrated, and she used this language in the context of one brief, private conversation with two of her co-workers with whom she believed she shared an affinity. Her comments were not loud enough for anyone to hear. She did not make her comments to customers, and she did not make her comments directly to the co-worker about whom she was complaining. The record is also devoid of evidence that either of these co-workers were offended or unable to continue with their work responsibilities as a result of the conversation. Thus, Wozniak's comments were part of an isolated incident during a brief, private, casual conversation that does not rise to the level of misconduct and that demonstrates no intent to harass her co-worker within the meaning of WIS. STAT. § 108.04(5)(d).

¶35 The Majority dismisses this context as irrelevant to the analysis, simply looking to the words Wozniak used and nothing more. Majority, ¶22. However, dismissing this context interprets the type of harassment that rises to the level of misconduct out of its statutory context. The Majority rejects the context of Wozniak's comments, concluding that to do so effectively adds language to the statute. *Id.*, ¶24. However, in ignoring the context in which Wozniak's comments

were made fails to place "harassment" within its statutory context. Moreover, I do not agree that this approach adds language to the statute. Thus, I would conclude that the context of Wozniak's comments is relevant to the analysis and in placing the type of harassment that rises to the level of misconduct within the statutory context, I would conclude that Wozniak's conduct did not rise to the level of misconduct defined in WIS. STAT. § 108.04(5)(d).

¶36 Having so concluded, I would additionally analyze whether Wozniak's conduct constituted misconduct generally or whether Wozniak's conduct constituted substantial fault. Here, I would conclude that Wozniak's conduct constitutes neither.

¶37 The general definition of misconduct first articulated in *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636 (1941), and now codified in the introduction of WIS. STAT. § 108.04(5) defines misconduct as

> one or more actions or conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which an employer has a right to expect of his or her employees, or in carelessness of such degree or recurrence as to manifest culpability, wrongful intent, or evil design of equal severity to such disregard, or to show an intentional and substantial disregard of an employer's interests, or of an employee's duties and obligations to his or her employer.

¶38 Under this definition of misconduct, LIRC consistently applies a standard that the conduct must be sufficiently egregious to rise of the level of misconduct or the employee must be aware that his or her job is in jeopardy for engaging in certain conduct. *See Toland v. Nash Finch Co.*, Hearing No. 11203620EC (LIRC Mar. 27, 2012) ("To sustain its burden to establish that an employee's violation of a workplace harassment policy is misconduct, employer

5

typically needs to show that the harassing conduct was severe and pervasive, or, if a single act, unusually egregious."). As a general rule, an employee must be aware of the employer's requirements in order to find that an employee deliberately or intentionally violated or disregarded the employer's rules.

¶39     As described above, nothing about Wozniak's conduct rises to the level of misconduct under this definition. Her conduct lacks a willful or wanton disregard of her employer's interests. As one brief, private conversation, her conduct was not sufficiently egregious, and the workplace rules provided by Meijer gave Wozniak no reason to suspect that her job was in jeopardy for making such comments to two co-workers in that conversation.

¶40     Meijer submitted a document containing its workplace rules that contained no definition of harassment, and it also never presented testimony from the co-worker who reported Wozniak's comments to management. Furthermore, the second workplace rule provided by Meijer applies to "violent behavior," and Wozniak's comments made during a brief, private conversation cannot be construed in any way as violent behavior. Therefore, I would conclude that Wozniak did not engage in misconduct as provided by this general definition.

¶41     The DWD additionally argues that, in addition to having an interest in Wozniak complying with the workplace rules, Meijer had an interest in having Wozniak refrain from conduct that would expose Meijer to liability under either the Wisconsin Fair Employment Act (WFEA), *see* WIS. STAT. §§ 111.31-.395, or Title VII, *see* 42 U.S.C. §§ 2000e-2000e(17). It also argues that Meijer had an interest in Wozniak refraining from conduct that would expose Meijer to boycotting and protests in the current age of the internet and viral videos for employing someone who makes homophobic comments. Both of these arguments

confuse the issue. The issue is whether Wozniak engaged in misconduct within the meaning of WIS. STAT. ch. 108, not whether Wozniak's comments exposed Meijer to liability under WFEA or Title VII, or whether public opinion would support Meijer's decision to continue to employ Wozniak.

¶42 Last, I would address whether this case qualifies for discharge for substantial fault. Substantial fault is defined as "those acts or omissions of an employee over which the employee exercised reasonable control and which violate reasonable requirements of the employee's employer." WIS. STAT. § 108.04(5g). The statute "defines substantial fault broadly," but "the legislature did not disqualify every employee who commits such errors from receiving unemployment benefits." *Operton*, 375 Wis. 2d 1, ¶36.

¶43 In this case, I would conclude that Wozniak was not discharged for substantial fault because Wozniak had no reason to believe that her acts would violate a reasonable requirement of her employer. As has been repeatedly stated, there is no dispute that Meijer's workplace rules prohibited harassment but also provided no definition of what was considered harassment under the rule. Under a workplace rule with no further guidance on what conduct constitutes harassment—particularly one indicating that a private conversation could lead to harassment—Wozniak would have had no reason to believe that her brief, private conversation with two co-workers would qualify as harassment. Considering the second workplace rule provided by Meijer—that rule cites violent conduct, of which, as noted, Wozniak's conduct is not. Thus, there is no evidence that Wozniak had a reason to believe that she was violating a requirement of her employer in having a brief, private conversation with her co-workers.

¶44    In sum, I would conclude that Wozniak was not discharged for misconduct or substantial fault within the meaning of WIS. STAT. § 108.04(5) or (5g), and I would uphold LIRC's decision to award benefits to Wozniak. Accordingly, I respectfully dissent.